## IN THE MAGISTRATE COURT OF HOUSTON COUNTY
## STATE OF GEORGIA

ET-8 LP
Transcendent Electra Management, LLC

P.O. Box 451027
Atlanta, GA 31145
_____
Plaintiff(s)

FILED HOUSTON COUNTY
MAGISTRATE COURT

2023 APR -4  PM 3:56

vs.

Civil Action No. _2023 mv 202-876_

DEPUTY CLERK

William Gordon, and All Other Occupants
117 Martin Mill Trl
Warner Robins, GA 31093
_____
Defendant(s)

### PETITION FOR WRIT OF POSSESSION

Personally appeared the undersigned affiant who on oath says that affiant is ~~(owner)~~, ~~(attorney-at-law)~~, (agent) for Plaintiff(s) herein, and that Defendant(s) is/are in possession as tenant of premises at the address as stated above, in Houston County, the property of said Plaintiff(s). FURTHER: (check applicable claim(s))

(a) THAT tenant fails to pay the rent which is now past due;

(b) THAT tenant holds the premises over and beyond the term for which they were rented or leased to him;

(c) THAT tenant Is a tenant at sufferance;

(d) _____
_____ ; and

(e) THAT plaintiff(s) is/are entitled to recover any and all rent that may come due until this action is finally concluded.

Plaintiff(s) desires and has demanded possession of the premises and Defendant(s) has/have failed and refused to deliver said possession.

WHEREFORE, Plaintiff(s) demand(s) (a) possession of the premises; (b) past due rent of $ 11,250.00 (c) rent accruing up to the date of judgment or vacancy at the rate of $ 30: 62.50 \ 31: 60.48 per day. (Calculate daily rental rate, if seeking accruing to date of judgment or vacancy.) (d) $155.00 Court + $500.00 Filing Fee + $1,125.00 Late Fees + $1,778.45 Utilities
_____

Sworn to and subscribed before me,
This 31st day of March, 2023.

_____
Magistrate or Deputy Clerk

Affiant( )  Owner( )  Attorney at Law( )  Agent(x)

The application of Plaintiff(s) is attached hereto and all dates and signatures thereon are hereby incorporated by reference here in for all purposes

### NOTICE AND SUMMONS

You are hereby commanded and required, either personally or by an attorney, to appear and present an answer to the affidavit, during the regular business hours.  Monday through Friday, at the Magistrate Court of Houston County, 89 Cohen Walker Drive, Warner Robbins (31088) on or before the SEVENTH (7th) day from the date of service of this summons upon you (or on the first business day thereafter IF the seventh day falls on a Saturday, Sunday or Legal Holiday).

Your answer may be given either orally or in writing; and may contain any legal or equitable defenses or counterclaim against the plaintiff. The SEVENTH (7th) day after the date of service of this summons is the last possible date for your answer.   If you fail to answer as required, a Writ of Possession and judgment for the amount claimed due by the plaintiff will be granted without further notice to you.

WITNESS THE HONORABLE JUDGES, MAGISTRATE COURT OF HOUSTON COUNTY, GEORGIA

This 4 day of April, 23

_Kalla Hunsley_
(DEPUTY) Clerk of Court

## IN THE MAGISTRATE COURT OF HOUSTON COUNTY

### STATE OF GEORGIA

FILED HOUSTON COU
MAGISTRATE COUR

2023 APR -4  PM 3:

DEPUTY CLERK

ET-8 LP
Transcendent Electra Management, LLC

_____,

**Plaintiff,**

William Gordon
117 Martin Mill Trl
Warner Robins, GA 31093

_____,

CIVIL ACTION FILE NO. _____

**Defendant,**

### MILITARY AFFIDAVIT

The undersigned, after first being duly sworn, states the following:

1.

I am of age, sound mind, and legally authorized to sign this affidavit on behalf of the Plaintiff.

2.

This affidavit is executed pursuant to the Service Members Civil Relief Act, 50 U.S.C. App. 521. Affiant further acknowledges any false statement made in this affidavit my subject the affiant to imprisonment not to exceed one year and a fine.

3.

Affiant states the Defendant, William Gordon _____, ( ) is, ( ) is not or (X) unable to determine, a member of the military forces of the United States.

4.

Affiant is personally knowledgeable of the facts contained in this affidavit and affirms the information contained herein is true and correct.

This 31st day of March , 20 23 .

Printed Name: Danielle Campbell

Title: Agent for Plaintiff

Sworn to and subscribed before me

this ____31st____ day of March , 2023

NOTARY PUBLIC

# Resident Ledger



**Date: 03/28/2023**

| Code | t0007514 | Property | et81186 | Lease From | 06/01/2022 |
|------|----------|----------|---------|------------|------------|
| Name | William Gordon | Unit | ET81186 | Lease To | 05/31/2023 |
| Address | 117 Martin Mill Trl | Status | Current | Move In | 06/01/2022 |
| | | Rent | 1875.00 | Move Out | |
| City | Warner Robbins, GA 31093 | Phone (H) | | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 05/13/2022 | app | Application Fee (William Gordon) | 100.00 | | 100.00 | 178347 |
| 05/13/2022 | | chk# 138445052 Debit Card On-Line Payment ; Web - Online Leasing | | 100.00 | 0.00 | 153743 |
| 05/18/2022 | admin | Administration/Portal Fee | 50.00 | | 50.00 | 178736 |
| 05/18/2022 | deposit | Security Deposit | 1,875.00 | | 1,925.00 | 178738 |
| 05/18/2022 | rent | June Rent | 1,875.00 | | 3,800.00 | 178739 |
| 05/18/2022 | HmCon | June Home Concierge | 14.99 | | 3,814.99 | 178740 |
| 05/18/2022 | pestctrl | June Pest Control | 40.00 | | 3,854.99 | 178741 |
| 05/18/2022 | deposit | SD paid by Jetty | (1,875.00) | | 1,979.99 | 178742 |
| 05/23/2022 | | chk# 138998719 Debit Card On-Line Payment ; Web - Resident Services | | 104.99 | 1,875.00 | 154183 |
| 05/23/2022 | | chk# 138998720 Debit Card On-Line Payment ; Web - Resident Services | | 1,875.00 | 0.00 | 154184 |
| 06/14/2022 | rent | tenant purchased refrigerator. | (1,458.39) | | (1,458.39) | 184872 |
| 06/16/2022 | key | Key | 50.00 | | (1,408.39) | 185099 |
| 07/01/2022 | rent | Rent (07/2022) | 1,875.00 | | 466.61 | 188441 |
| 07/01/2022 | pestctrl | Pest Control (07/2022) | 40.00 | | 506.61 | 188442 |
| 07/01/2022 | | chk# 144576484 Debit Card On-Line Payment ; Mobile App - Resident Services | | 506.61 | 0.00 | 159011 |
| 08/01/2022 | rent | Rent (08/2022) | 1,875.00 | | 1,875.00 | 197414 |
| 08/01/2022 | pestctrl | Pest Control (08/2022) | 40.00 | | 1,915.00 | 197415 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 08/01/2022 | | chk# 148000801 Debit Card On-Line Payment ; Mobile App - Resident Services | | 1,915.00 | 0.00 | 162061 |
| 09/01/2022 | AcctSFee | Account Setup Fee Charges (Conservice) | 40.00 | | 40.00 | 204275 |
| 09/01/2022 | elecbill | Electric Charges (Conservice) - 06/06/22-07/06/22 | 264.38 | | 304.38 | 204276 |
| 09/01/2022 | elecbill | Electric Charges (Conservice) - 06/01/22-06/06/22 | 35.85 | | 340.23 | 204277 |
| 09/01/2022 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 352.22 | 204278 |
| 09/01/2022 | StmWtr | Stormwater Charges (Conservice) - 06/01/22-06/27/22 | 4.10 | | 356.32 | 204279 |
| 09/01/2022 | trash | Trash Charges (Conservice) - 06/01/22-06/27/22 | 17.36 | | 373.68 | 204280 |
| 09/01/2022 | water | Water Charges (Conservice) - 06/01/22-06/27/22 | 42.19 | | 415.87 | 204281 |
| 09/01/2022 | rent | Rent (09/2022) | 1,875.00 | | 2,290.87 | 207992 |
| 09/01/2022 | pestctrl | Pest Control (09/2022) | 40.00 | | 2,330.87 | 207993 |
| 09/30/2022 | | chk# 155778667 Debit Card On-Line Payment ; Web - Resident Services | | 2,658.71 | (327.84) | 171887 |
| 10/01/2022 | elecbill | Electric Charges (Conservice) - 07/06/22-08/06/22 | 254.44 | | (73.40) | 213928 |
| 10/01/2022 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | (61.41) | 213929 |
| 10/01/2022 | StmWtr | Stormwater Charges (Conservice) - 06/27/22-07/25/22 | 4.25 | | (57.16) | 213930 |
| 10/01/2022 | trash | Trash Charges (Conservice) - 06/27/22-07/25/22 | 18.00 | | (39.16) | 213931 |
| 10/01/2022 | water | Water Charges (Conservice) - 06/27/22-07/25/22 | 39.16 | | 0.00 | 213932 |
| 10/01/2022 | rent | Rent (10/2022) | 1,875.00 | | 1,875.00 | 218496 |
| 10/01/2022 | pestctrl | Pest Control (10/2022) | 40.00 | | 1,915.00 | 218497 |
| 11/01/2022 | elecbill | Electric Charges (Conservice) - 08/06/22-09/06/22 | 244.78 | | 2,159.78 | 225624 |
| 11/01/2022 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 2,171.77 | 225625 |
| 11/01/2022 | StmWtr | Stormwater Charges (Conservice) - 07/25/22-08/25/22 | 4.25 | | 2,176.02 | 225626 |
| 11/01/2022 | trash | Trash Charges (Conservice) - 07/25/22-08/25/22 | 24.80 | | 2,200.82 | 225627 |
| 11/01/2022 | water | Water Charges (Conservice) - 07/25/22-08/25/22 | 44.93 | | 2,245.75 | 225628 |
| 11/01/2022 | rent | Rent (11/2022) | 1,875.00 | | 4,120.75 | 230469 |
| 11/01/2022 | pestctrl | Pest Control (11/2022) | 40.00 | | 4,160.75 | 230470 |
| 11/06/2022 | late | Late Fee, 10% of $1875.000000 | 187.50 | | 4,348.25 | 235707 |
| 12/01/2022 | elecbill | Electric Charges (Conservice) - 09/06/22-10/06/22 | 190.12 | | 4,538.37 | 239206 |
| 12/01/2022 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 4,550.36 | 239207 |
| 12/01/2022 | StmWtr | Stormwater Charges (Conservice) - 08/25/22-09/23/22 | 4.25 | | 4,554.61 | 239208 |
| 12/01/2022 | trash | Trash Charges (Conservice) - 08/25/22-09/23/22 | 25.40 | | 4,580.01 | 239209 |

| Date | Type | Description | Charge | | Balance | Ref |
|---|---|---|---|---|---|---|
| 12/01/2022 | water | Water Charges (Conservice) - 08/25/22-09/23/22 | 40.66 | | 4,620.67 | 239210 |
| 12/01/2022 | rent | Rent (12/2022) | 1,875.00 | | 6,495.67 | 244164 |
| 12/01/2022 | pestctrl | Pest Control (12/2022) | 40.00 | | 6,535.67 | 244165 |
| 12/01/2022 | HmCon | Resident Benefit Fee (12/2022) | 14.99 | | 6,550.66 | 250242 |
| 12/06/2022 | late | Late Fee, 10% of $1875.000000 | 187.50 | | 6,738.16 | 251156 |
| 01/01/2023 | elecbill | Electric Charges (Conservice) - 10/06/22-11/06/22 | 163.12 | | 6,901.28 | 254732 |
| 01/01/2023 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 6,913.27 | 254733 |
| 01/01/2023 | StmWtr | Stormwater Charges (Conservice) - 09/23/22-10/25/22 | 4.25 | | 6,917.52 | 254734 |
| 01/01/2023 | trash | Trash Charges (Conservice) - 09/23/22-10/25/22 | 18.00 | | 6,935.52 | 254735 |
| 01/01/2023 | water | Water Charges (Conservice) - 09/23/22-10/25/22 | 41.35 | | 6,976.87 | 254736 |
| 01/01/2023 | rent | Rent (01/2023) | 1,875.00 | | 8,851.87 | 267381 |
| 01/01/2023 | HmCon | Resident Benefit Fee (01/2023) | 14.99 | | 8,866.86 | 267382 |
| 01/01/2023 | pestctrl | Pest Control (01/2023) | 40.00 | | 8,906.86 | 267383 |
| 01/06/2023 | late | Late Fee, 10% of $1875.000000 | 187.50 | | 9,094.36 | 269146 |
| 02/01/2023 | elecbill | Electric Charges (Conservice) - 11/06/22-12/06/22 | 166.85 | | 9,261.21 | 272226 |
| 02/01/2023 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 9,273.20 | 272227 |
| 02/01/2023 | StmWtr | Stormwater Charges (Conservice) - 10/25/22-11/28/22 | 4.25 | | 9,277.45 | 272228 |
| 02/01/2023 | trash | Trash Charges (Conservice) - 10/25/22-11/28/22 | 18.00 | | 9,295.45 | 272229 |
| 02/01/2023 | water | Water Charges (Conservice) - 10/25/22-11/28/22 | 45.60 | | 9,341.05 | 272230 |
| 02/01/2023 | rent | Rent (02/2023) | 1,875.00 | | 11,216.05 | 283540 |
| 02/01/2023 | HmCon | Resident Benefit Fee (02/2023) | 14.99 | | 11,231.04 | 283541 |
| 02/01/2023 | pestctrl | Pest Control (02/2023) | 40.00 | | 11,271.04 | 283542 |
| 02/06/2023 | late | Late Fee, 10% of $1875.000000 | 187.50 | | 11,458.54 | 288189 |
| 03/01/2023 | elecbill | Electric Charges (Conservice) - 12/06/22-01/06/23 | 215.30 | | 11,673.84 | 291720 |
| 03/01/2023 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 11,685.83 | 291721 |
| 03/01/2023 | StmWtr | Stormwater Charges (Conservice) - 11/28/22-12/22/22 | 4.25 | | 11,690.08 | 291722 |
| 03/01/2023 | trash | Trash Charges (Conservice) - 11/28/22-12/22/22 | 18.00 | | 11,708.08 | 291723 |
| 03/01/2023 | water | Water Charges (Conservice) - 11/28/22-12/22/22 | 38.42 | | 11,746.50 | 291724 |
| 03/01/2023 | rent | Rent (03/2023) | 1,875.00 | | 13,621.50 | 299390 |
| 03/01/2023 | HmCon | Resident Benefit Fee (03/2023) | 14.99 | | 13,636.49 | 299391 |
| 03/01/2023 | pestctrl | Pest Control (03/2023) | 40.00 | | 13,676.49 | 299392 |
| 03/06/2023 | late | Late Fee, 10% of $1875.000000 | 187.50 | | 13,863.99 | 308302 |
| 03/28/2023 | lglfee | Legal Fee | 500.00 | | 14,363.99 | 319228 |
| 04/01/2023 | elecbill | Electric Charges (Conservice) - 01/06/23-02/06/23 | 210.88 | | 14,574.87 | 312235 |

| 04/01/2023 | SvcFee | Service Fee Charges (Conservice) | 11.99 | | 14,586.86 | 312236 |
| 04/01/2023 | StmWtr | Stormwater Charges (Conservice) - 12/22/22-01/27/23 | 4.25 | | 14,591.11 | 312237 |
| 04/01/2023 | trash | Trash Charges (Conservice) - 12/22/22-01/27/23 | 18.00 | | 14,609.11 | 312238 |
| 04/01/2023 | water | Water Charges (Conservice) - 12/22/22-01/27/23 | 44.34 | | 14,653.45 | 312239 |

### Transcendent Electra Management, LLC
### Residential Lease Agreement - Georgia

This agreement, made this (5/24/2022), between (ET-8 LP), hereinafter referred to as the LANDLORD, through its agent **Transcendent Electra Management, LLC,** and (William Gordon) hereinafter referred to as the TENANT, concerning the lease of the following described property: (117 Martin Mill Trl Warner Robbins, GA 31093) is agreed to by and shall bind the TENANT, its heirs, estate, or legally appointed representatives. TENANT as herein used shall include all persons to whom this property is leased. LANDLORD as herein used shall include the owner(s) of the premises, its heirs, assigns or representatives and/or any agent(s) designated by the owner(s).

Landlord's E-Mail Address: (tcampbell@timelectra.com)
Landlord's Telephone Number: (864-613-4943)
Tenant's E-Mail Address: (williamhaywoodgordon@gmail.com)
Tenant's Telephone Number: ((770) 630-1724)

1. **TERM OF LEASE:** (June 1, 2022) to (May 31, 2023). If for any reason LANDLORD cannot deliver possession of the premises to TENANT by the beginning date, the beginning date may be extended up to 30 days or lease voided at LANDLORD'S option without LANDLORD being liable for any expenses caused by such delay or termination.

2. **OCCUPANTS:** Only the following individuals shall occupy the premises unless written consent of the LANDLORD is obtained. A reasonable number of guests may occupy the premises without prior written consent if stay is limited to 72 hours. If unauthorized occupants are found to be at the property for longer than 72 hours without prior written consent of the LANDLORD, that is a material breach of the terms of this Lease Agreement and grounds for termination.

   **(Additonal Occupant 1), (Additonal Occupant 2), (Additonal Occupant 3), (Additonal Occupant 4)**

**FIRST RENTAL PAYMENT:** TENANT agrees to pay the sum of ($1,875.00)as first rental payment (prorated if applicable) for the period of (6/1/2022) to (6/30/2022).

3. **RENT:** TENANT shall pay total rent in the amount of ($22,500.00) for the lease term. TENANT agrees to pay the monthly rent amount of ($1,875,00.00) plus any applicable sales tax as rent on the 1st day of each month in advance without demand.  Rent must be received by LANDLORD or its designated agent on or before the due date. A late fee of 10% of the monthly rent, shall be due as additional rent if TENANT fails to make rent payments on or before the 5th day of each month. Cash payments are not accepted.

   Rental Increase Date: (6/1/2023).        Rental Increase percent: (%)

   Residents hereby acknowledge that all Lease Payments shall be made via the Online Portal as set up by the Landlord. Residents understand that Landlord shall not accept payments by cash, cashier's check, personal check, bank check or money orders at any physical location from the date of the signing of this Addendum.  Landlord reserves the right to charge Resident convenience fees or surcharges in an amount as designated by the Landlord, not to exceed the maximum amount permitted by applicable law.  In the event of a default under the terms of the Lease Agreement, Residents further understand that the Online Portal may be closed and unavailable for payments in accordance with the Georgia Statutes.  The imposition of late fees is not a substitution or waiver of available Georgia law remedies. If rent is not received by the 1st day of each month, LANDLORD may serve a Three-Day Notice on the next day or any day thereafter as allowed by law.  All signatories to this lease are jointly and severally responsible for the faithful performance of this lease. All payments made shall first be applied to any outstanding balances of any kind including late charges and/or any other charges due under this lease. All notices by TENANT to LANDLORD shall be sent to LANDLORD'S address in section 5 below by certified mail.

4. **PETS:** TENANT shall not keep any animal or pet in or around the rental premises without LANDLORD'S prior written approval and a PET ADDENDUM signed by all parties. In the event pet(s) are permitted under this lease, TENANT shall secure and/or temporarily remove any pet(s) on the premises if the premises are being shown for sale or rental, repairs or inspections are being conducted or at any other appropriate or necessary time when requested by LANDLORD.  If TENANT brings a pet onto the premises and no pet addendum has been signed and/or all required fees/deposits paid, the TENANT shall be in default of the lease and shall owe a $300 penalty due as additional rent immediately to LANDLORD and be subject to eviction.

Landlord's Initials: TC _____                     Tenant's Initials: WA _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

5.  **Notices:** Transcendent Electra Management, LLC is LANDLORD's Agent. All notices to LANDLORD must be sent to LANDLORD'S Agent at **1170 Kane Concourse #400, Bay Harbor Islands FL 33154**, unless LANDLORD gives Tenant written notice of a change. LANDLORD's Agent may perform inspections on behalf of LANDLORD, subject to Article 24 below. All notices to LANDLORD shall be given by certified mail, return receipt, or by hand delivery to LANDLORD or LANDLORD's Agent.

    Any notice to TENANT shall be given by certified mail, return receipt requested, or delivered to TENANT at the Premises. If TENANT is absent from the Premises, a notice to TENANT may be given by leaving a copy of the notice at the Premises.

6.  **SECURITY DEPOSIT:** TENANT agrees to pay LANDLORD the sum of ($1,875.00 Paid by Jetty) as security for faithful performance by TENANT of all terms, covenants and conditions of this lease.
    a.  Per Georgia law (O.C.G.A. § 44-7-33 (a)), Tenant is advised to seriously and carefully participate in the MOVE IN WALKTHROUGH
        i.  Georgia law at O.C.G.A. § 44-7-33 (a) states: Prior to tendering a security deposit, the tenant shall be presented with a comprehensive list of any existing damage to the premises which shall be for the tenant's permanent retention. The tenant shall have the right to inspect the premises to ascertain the accuracy of such list prior to taking occupancy. The landlord and the tenant shall sign the list, and this shall be conclusive evidence of the accuracy of the list but shall not be conclusive as to latent defects. If the tenant refuses to sign the list, the tenant shall state specifically in writing the items on such list to which he or she dissents and shall sign such statement of such dissent.
    b.  Per Georgia law (O.C.G.A. § 44-7-34), LANDLORD shall return this deposit to Tenant within 30 days of Tenant vacating the premises. It is TENANT'S responsibility to notify LANDLORD of TENANT'S forwarding address. LANDLORD, may, however retain all or part of the security deposit for non-payment of rent/utilities/late fees/legal fees, unpaid pet fees, and damage to the premises beyond normal wear and tear. TENANT cannot dictate that this deposit be used for any rent due. If TENANT breaches the lease by abandoning, surrendering or being evicted from the rental premises prior to the lease expiration date (or the expiration of any extension) TENANT will be responsible for unpaid rent, physical damages, future rent due, attorney's fees, costs and any other amounts due under the terms of the tenancy or Georgia law. The security deposit (and advance rent, if applicable) will be held in the following manner: Deposited in a separate non-interest bearing account with Bank of America 15999 S.W. 29th Street, Miramar, Georgia 33027. Security deposit refunds if any shall be made by mail only, as provided by law, made out in names of all TENANTS in one check, and, may not be picked up in person from LANDLORD.
        i.  Georgia law at O.C.G.A. § 44-7-34 (a) states: Within 30 days after obtaining possession of the premises as provided in subsection (b) of Code Section 44-7-33, a landlord shall return to the tenant the full security deposit which was deposited with the landlord by the tenant. No security deposit shall be retained to cover ordinary wear and tear which occurred as a result of the use of the premises for the purposes for which the premises were intended, provided that there was no negligence, carelessness, accident, or abuse of the premises by the tenant or members of his or her household or their invitees or guests. In the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement identifying the exact reasons for the retention thereof, which shall include the comprehensive list of damages prepared as required by Code Section 44-7-33, if the reason for retention is based on damages to the premises. When such statement is delivered, it shall be accompanied by a payment of the difference between any sum deposited and the amount retained. The landlord shall be deemed to have complied with this Code section by mailing such statement and any payment required to the last known address of the tenant via first-class mail. If the letter containing the payment is returned to the landlord undelivered and if the landlord is unable to locate the tenant after reasonable effort, the payment shall become the property of the landlord 90 days after the date the payment was mailed. Nothing in this Code section shall preclude the landlord from retaining the security deposit for nonpayment of rent or of fees for late payment, for abandonment of the premises, for nonpayment of utility charges, for repair work or cleaning contracted for by the tenant with third parties, for unpaid pet fees, or for actual damages caused by the tenant's breach, provided that the landlord attempts to mitigate the actual damages.
    c.  Pursuant to Georgia law (O.C.G.A. § 44-7-33), Tenant is advised to participate carefully and seriously in the MOVE OUT INSPECTION or risk being barred from the protections of O.C.G.A. § 44-7-33 and 34.
        i.  Georgia law at O.C.G.A. § 44-7-33 (b)(1) states: Within three business days after the termination of the residential lease and vacation of the premises or the surrender and acceptance of the premises, whichever occurs first, the landlord or his or her agent shall inspect the premises and compile a comprehensive list of any damage done to the premises which is the basis for any charge against the security deposit and the estimated dollar value of such damage. The tenant shall upon request have the right to inspect the premises and such list within five business days after the termination of the residential lease and vacation of the premises or the surrender and acceptance of the premises and the inspection by the landlord or his or her agent. If the tenant is present with the landlord at the time of

Landlord's Initials: ___TC___  _____        Tenant's Initials: __NM__  _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8769-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

the inspection, the landlord and the tenant shall sign the list, and this shall be conclusive evidence of the accuracy of the list. If the tenant refuses to sign the list, he or she shall state specifically in writing the items on the list to which he or she dissents and shall sign such statement of dissent. The landlord shall then comply with the provisions of Code Section 44-7-34.

ii.   Georgia law at O.C.G.A. § 44-7-33 (c) states: A tenant who disputes the accuracy of the final damage list compiled pursuant to subsection (b) of this Code section and provided to the tenant pursuant to Code Section 44-7-34 may bring an action in any court of competent jurisdiction in this state to recover the portion of the security deposit which the tenant believes to be wrongfully withheld for damages to the premises. The tenant's claims shall be limited to those items to which the tenant specifically dissented in accordance with this Code section. If the tenant is present for the inspection of the premises after vacancy and signs the landlord's final damage list or fails to dissent specifically in accordance with this Code section, the tenant shall not be entitled to recover the security deposit or any other damages under Code Section 44-7-35, provided that the lists required under this Code section contain written notice of the tenant's duty to sign or to dissent to the list. A tenant who did not inspect the premises after vacancy or was not present for the landlord's inspection of the premises after vacancy and, in either case, did not request a copy of the landlord's final damage list shall have the right to dispute the damages assessed by the landlord.

7.  **ASSIGNMENTS:** TENANT shall not assign this lease or sublet the premises or any part thereof. Any unauthorized transfer of interest by the TENANT shall be a breach of this agreement, and grounds for termination.

8.  **APPLICATION:** If TENANT has filled out a rental application, any misrepresentation made by the TENANT in same will be a breach of this agreement and LANDLORD may terminate the tenancy.

9.  **FIXTURES AND ALTERATIONS:** TENANT must obtain prior written consent from LANDLORD before painting, installing fixtures, making alterations, additions or improvements and if permission is granted, same shall become LANDLORD'S property and shall remain on the premises at the termination of the tenancy. TENANT shall not install TV antenna(s), satellite dishes or other external fixtures without LANDLORD'S prior written approval.  If TENANT violates this term, that shall be a material breach of this agreement and grounds for termination.

10. **USE OF PREMISES:** TENANT shall maintain the premises in a clean and sanitary condition and not disturb surrounding residents or the peaceful and quiet enjoyment of the premises or surrounding premises. TENANT shall install window shades or draperies (no foil, sheets, paper etc. allowed) within **15 days of taking occupancy** if not already provided. Premises are to be used and occupied by the TENANT for only residential, non-business, private housing purposes only. TENANT shall not operate any type of day care or child sitting service on the premises. TENANT shall secure insurance immediately for any water filled devices with a loss payable clause to LANDLORD. No trampolines, athletic equipment, recreational equipment, or any items or activities which can cause interference with the insurance coverage on the premises will be permitted.  TENANT shall not keep or store any goods or materials of any kind that are combustible or could increase fire risk on the premises. **After the first 30 days of the TENANT taking occupancy, the TENANT shall be responsible for paying for all costs of extermination of pests and insects except for termites.** TENANT agrees to keep driveways and walking areas clean so as to prevent any buildup of mold or allow the surfaces to become slippery.

11. **SMOKING:** Smoking is **NOT** permitted inside the premises by TENANT, OCCUPANTS, guests or invitees.  TENANT understands that smoking inside the premises shall be considered a material default under this lease agreement, and grounds for termination. TENANT also understand that violation of this policy will result in the TENANT being held responsible for paying all expenses associated with smoke remediation (including, but not limited to, re-painting, carpet cleaning, HVAC cleaning) inside the premises.

12. **RISK OF LOSS:** All TENANT'S personal property shall be at the risk of the TENANT or property owner thereof and LANDLORD shall not be liable for any damage to said personal property of the TENANT arising from criminal acts, fire, storm, Flood, rain or wind damage, acts of negligence of any person whomsoever, or from the bursting or leaking of water pipes. **TENANT is strongly urged to secure insurance for personal property.**

13. **Homeowner's/Condo Association:**
    IF TENANT MUST BE APPROVED BY A HOMEOWNERS' ASSOCIATION ("ASSOCIATION"), LANDLORD AND TENANT AGREE THAT THE LEASE IS CONTINGENT UPON RECEIVING APPROVAL FROM THE ASSOCIATION. ANY APPLICATION FEE REQUIRED BY AN ASSOCIATION SHALL BE PAID BY TENANT.
    IF SUCH APPROVAL IS NOT OBTAINED PRIOR TO COMMENCEMENT OF LEASE TERM, EITHER PARTY MAY

    TERMINATE THE LEASE BY WRITTEN NOTICE TO THE OTHER GIVEN AT ANY TIME PRIOR TO APPROVAL BY THE ASSOCIATION, AND IF THE LEASE IS TERMINATED, TENANT SHALL RECEIVE RETURN OF DEPOSITS SPECIFIED IN ARTICLE 5, IF MADE.  If the Lease is not terminated, rent shall abate until the approval is obtained from the association, Tenant agrees to use due diligence in applying for association approval and to comply with the require

Landlord's Initials: _____   _____          Tenant's Initials: _____   _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

ments for obtaining approval. **TENANT shall pay the security deposit required by the association, if applicable**.

14. **DEFAULT:** (1) Failure of TENANT to pay rent or any additional rent when due, or (2) TENANT'S violation of any other term, condition or covenant of this lease (and if applicable, attached rules and regulations), condominium by-laws or neighborhood deed restrictions or (3) failure of TENANT to comply with any Federal, State and/or Local laws, rules and ordinances, or (4) TENANT'S failure to move into the premises or TENANT'S abandonment of the premises, shall constitute a default by TENANT. Upon default, TENANT shall owe LANDLORD rent and all sums as they become due under the terms of this lease and any addendums attached hereto and any and all amounts owed to LANDLORD as permitted by Georgia law. If the TENANT abandons or surrenders possession of the premises during the lease term or any renewals, or is evicted by the LANDLORD, LANDLORD may retake possession of the premises and make a good faith effort to re-rent it for the TENANT'S account. Retaking of possession shall not constitute a rescission of this lease nor a surrender of the leasehold estate. If TENANT breaches this lease agreement, in addition to any other remedies available by law and this lease agreement, TENANT shall be responsible for any leasing fee or commission charge which OWNER may incur in re-leasing the premises. If TENANT'S actions or inactions result in any fines, attorney's fees, costs or charges from or imposed by a condominium, homeowner's association, city municipality or any governing body, if applicable, TENANT shall be in default of this lease and shall be immediately required to pay such sums as additional rent.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.

Landlord's Initials: _____    Tenant's Initials: _____

DocuSign Envelope ID: 6F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

15. **Lead-Based Paint:** Complete if the dwelling was built before January 1, 1978. **Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lease from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of any known lead-based paint and/or lead-based hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial):**

_____ TC _____ (a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below):

(i) ☐   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

_____

(ii) ☒   Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ TC _____ (b) Records and reports available to the Lessor (check (i) or (ii) below):

(i) ☐   Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

_____

(ii) ☒   Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial):**

_____ WG _____ (c) Lessee has received copies of all information listed above.

_____ WG _____ (d) Lessee has received the pamphlet Protect Your Family from Lead in Your Home.

**Agent's Acknowledgment (initial):**

_____ FW _____ (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| XXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | Tymeshia Campbell | 6/3/2022 |
| --- | --- | --- | --- |
| Lessor's signature | Date | Lessor's signature | Date |
| WG | 6/3/2022 | | |
| Lessee's signature | Date | Lessee's signature | Date |
| Felicia Walters | 5/27/2022 | | |
| Agent's signature | Date | Agent's signature | Date |

Landlord's Initials: _TC_                                Tenant's Initials: _WG_

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

16. **Service Member:** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the National Guard or United States Reserve Forces, the TENANT has rights to terminate the Lease as provided in SERVICE MEMBERS CIVIL RELIEF ACT, 117 Stat. 2835 (2003) and pursuant to O.C.G.A. § 44-7-22.

17. **ATTORNEY'S FEES:** If LANDLORD employs an attorney due to TENANT's violation of the terms and conditions of this lease, TENANT shall be responsible for all costs and reasonable attorney's fees as incurred by the LANDLORD whether or not suit is filed. If suit is filed, the prevailing party shall be entitled to have the losing party pay the prevailing party's reasonable attorney's fees and court costs. Attorney fees are considered additional rent.

18. **UTILITIES:** Utilities will **NOT** be paid for, by LANDLORD, unless otherwise agreed upon below:

Utilities provided by LANDLORD: **(Insert HOA/Owner paid utilities)**

19. The TENANT agrees to pay all charges and deposits for all utilities. TENANT will be charged for water, sewer, trash, gas and electric charges. All utility Accounts shall remain in the LANDLORD name and shall be billed directly to TENANT for such service(s) and charge(s). All utility related charges billed to the property by the provider will be billed to the TENANT including, but not limited to utility taxes, stormwater, surcharges, and all miscellaneous charges. TENANT agrees to pay a $40.00 move-in fee and a monthly service fee of $11.99 in addition to the utility charges. This monthly service fee is for administration, billing, overhead and similar expenses and charges incurred by for providing billing services. Tenant agrees that LANDLORD may estimate any and all utility charges upon move-out (or at any other time) and such amounts shall be deemed final.

20. **VEHICLES:** Vehicle(s) must be currently licensed, owned by TENANT (or by AUTHORIZED OCCUPANTS), registered, operational and properly parked. TENANT agrees to abide by all parking rules established now or in the future by LANDLORD or the condominium or homeowner association's rules, if applicable. No trailers, campers, vehicles on blocks, motorcycles, boats or commercial vehicles are allowed on or about the premises without LANDLORD'S prior written approval. TENANT is not to repair or disassemble vehicles on the premises. Vehicles not meeting the above requirements and additional rules of LANDLORD are unauthorized vehicles subject to being towed at TENANT expense. Parking on the grass is prohibited. TENANT agrees to indemnify LANDLORD for any expenses incurred due to the towing of any vehicle belonging to the OCCUPANTS, guest or invitee of TENANT. **TENANT agrees that only the vehicles listed on application will be parked on the premises.**

21. **MAINTENANCE/INSPECTION:** TENANT agrees that TENANT has fully inspected the premises and accepts the condition of the premises in "as is" condition with no warranties or promises express or implied. TENANT shall maintain the premises in good, clean and tenantable condition throughout the tenancy, keep all plumbing fixtures in good repair, use all electrical, plumbing, HVAC, appliances and other equipment in a reasonable manner, removing all garbage in a clean and sanitary manner. For work orders related to normal wear and tear due to TENANT'S occupancy (for example, but not limited to, replacing light bulbs, appliance failure due to improper use, plumbing blockages due to TENANT'S use), TENANT is responsible for repair costs of $250 per occurrence unless otherwise agreed to by LANDLORD. TENANT is responsible for lawn and landscape maintenance (if applicable), pool maintenance (if applicable) and pest control. In the event TENANT or TENANT'S OCCUPANTS, guests or invitees cause any damage to the premises, LANDLORD may at its option repair same and TENANT shall pay for the expenses of same on demand or LANDLORD may require TENANT repair same, and in the event such repair is a major repair to the premises, which will necessitate the TENANT'S vacating the premises, LANDLORD may at its option require TENANT to temporarily vacate the premises without any rent abatement or may terminate this agreement, and TENANT agrees to immediately vacate the premises, temporarily or permanently as the case may be, holding LANDLORD harmless for any damages suffered. All charges incurred by LANDLORD shall be additional rent. TENANT shall notify LANDLORD immediately of any maintenance need or repair in writing. TENANT agrees that TENANT shall immediately test the smoke detector and shall maintain same. In the event there is a garbage disposal unit on the premises, unless otherwise agreed to in writing, LANDLORD has the option to remove the garbage disposal if it fails and re-plumb accordingly. Although the TENANT is responsible to replace HVAC filters every 30 days, LANDLORD reserves the right to enter the premises as it is determined to be necessary to conduct HVAC inspection and routine/preventative maintenance. In the event of repair, LANDLORD reserves the right to choose the quality of the material used in the reconstruction. Any damaged caused by the negligence of the TENANT, will be consider damage caused by TENANT. TENANT is responsible for replacing all filters, i.e. HVAC & Fridge, at the required replacement intervals. In the event of a repair that is found to be the fault of TENANT, TENANT agrees to reimburse LANDLORD, as additional rent, for the repairs within 30 day of delivering a final cost of the repair to TENANT.

22. **VACATING:** At the expiration of this agreement or any extension, TENANT shall peaceably surrender the premises and turn in all keys and any other property owned by LANDLORD leaving the premises in good, clean condition, ordinary wear and tear excepted. TENANT agrees to have the carpet cleaned, professionally, upon move out, or will incur a minimum carpet cleaning charge to be deducted from the security deposit in the amount of market rate. In addition to

Landlord's Initials: _____    Tenant's Initials: _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

any cleaning charges or any other charges due under the terms of this lease, TENANT agrees to a mandatory minimum unit cleaning charge to be deducted from the security deposit in the amount of market rate IF such items are not properly cleaned at the end of Tenant's possession. If keys to the premises are not returned to the LANDLORD at the time of move out, there will be a mandatory lock changing charge deducted from the security deposit in the amount of market rate. **If TENANT fails to give at least 30 days' notice of vacating prior to the expiration date of this lease or any renewal thereof, TENANT shall be liable to Landlord for liquidated damages in an amount equal to (2) TWO month's rent.** This liquidated damages amount is the exclusive remedy for the insufficient notice at the expiration of this lease or any renewal thereof, and is not a limitation upon or in lieu of either any other amounts owed by TENANT to LANDLORD under this lease or Georgia law, or any other remedies otherwise available to LANDLORD under this lease or Georgia law.

23. **SHOWING THE PROPERTY:** Tenant agrees to cooperate with Landlord and Landlord's Brokers to allow the Property to be shown to prospective buyers or tenants with 48 hours written notice during the entirety of the lease.

24. **RENEWAL:** If LANDLORD consents to TENANT remaining in the premises after the natural expiration of this lease, and no new lease is signed, the tenancy will be extended as a month-to-month tenancy under the terms and conditions of this lease AND there will be an additional rent charge equal to 10% of the monthly rent amount and TENANT agrees to pay the sum with the regular amounts due. The month-to-month tenancy may be terminated by either TENANT OR LANDORD by giving written notice not less than 30 days prior to the end of any monthly payment period. Termination of the tenancy shall occur on the last day of the month. TENANT remains responsible for rent through the end of TENANT'S occupancy. Notice from TENANT to LANDLORD must be made by certified mail. All other conditions of the lease shall remain in effect.

25. **RIGHT OF ENTRY:** LANDLORD, upon reasonable notice by telephone, hand-delivery or posting to TENANT, has the right of entry to the premises for showing, repairs, appraisals, inspections, or any other reason. LANDLORD has immediate right of entry in cases of emergency, or to protect or preserve the premises. TENANT shall not alter or add locks without prior written consent. If consent is given, TENANT must provide LANDLORD with a key to all locks. If TENANT replaces/alters/adds locks without written consent from LANDLORD, that is a material breach of this agreement and grounds for termination. LANDLORD may place "For Sale" or "For Rent" signs on the premises at any time.

26. **CONDEMNATION, DAMAGE TO PREMISES, ACTS OF GOD and TERMINATION:** If for any reason the premises are condemned by any governmental authority, destroyed, rendered uninhabitable, rendered dangerous to persons or property, and/or damaged through fire, water, smoke, wind, flood, act of God, nature or accident, or, if it becomes necessary, in the opinion of LANDLORD, that TENANT must vacate the premises in order for repairs to the premises to be undertaken, where TENANT or TENANT'S OCCUPANTS, guests or invitees did not cause the damage to the premises, LANDLORD may at its option, upon 7 days' written notice to TENANT, either (a) require TENANT to vacate the premises and abate all rent payments until Tenant is able to retake possession of the premises (including a refund, if applicable, of a prorated amount for those days already paid for that the Tenant shall not be in possession); or, (b) terminate the lease due to the untenantable condition of the property and immediately end all rent payments (including a refund, if applicable, of a prorated amount for those days already paid for that the Tenant shall not be in possession).

27. **WAIVERS:** The rights of the LANDLORD under this lease shall be cumulative, and failure on the part of the LANDLORD to exercise promptly any rights given hereunder shall not operate to forfeit any other rights allowed by this lease or by law.

28. **INDEMNIFICATION:** TENANT agrees to reimburse LANDLORD upon demand in the amount of the loss, property damage, or cost of repairs or service (including plumbing trouble) caused by the negligence or improper use by TENANT, TENANT'S agents, family or guests. TENANT at all times, will indemnify and hold harmless LANDLORD from all losses, damages, liabilities and expenses which can be claimed against LANDLORD for any injuries or damages to the person or property of any persons, caused by the acts, omissions, neglect or fault of TENANT, TENANT'S agents, family or guests, or arising from TENANT'S failure to comply with any applicable laws, statutes, ordinances or regulations.

29. **DISPUTES AND LITIGATION:** In the event of a dispute concerning the tenancy created by this agreement, TENANT agrees that if the premises are being managed by an agent for the record owner TENANT agrees to hold agent, its heirs, employees and assigns harmless and shall look solely to the record owner of the premises in the event of a legal dispute.

30. **INTEGRATION:** This lease and exhibits and attachments, if any, set forth the entire agreement between LANDLORD and TENANT concerning the premises, and there are no covenants, promises, agreements, conditions, or understandings, oral or written between them other than those herein set forth. If any provision in this agreement is illegal, invalid or unenforceable, that provision shall be void but all other terms and conditions of the agreement shall be

Landlord's Initials: ___  ___  ___          Tenant's Initials: ___  ___  ___

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

in effect.

31. **MODIFICATIONS:** No subsequent alteration, amendment, change or addition to this lease shall be binding upon LANDLORD unless reduced to writing and signed by the parties.

32. **ABANDONED PROPERTY: BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.**

33. **PEST CONTROL:** LANDLORD and TENANT acknowledge and agree that LANDLARD shall provide routine monthly pest control service. The monthly Pest Control fee shall be $40.00. Pest control fee shall be considered additional rent. LANDLORD reserves the right to terminate this service with 7 days written notice.

    RESIDENTS INITIALS: ( WJ ), (_____), (_____), (_____)

34. **LANDSCAPING PROVISION:**

    ☐ . LANDLORD shall provide regular landscaping/yard care to include mowing, edging, trimming, fertilizer, weed control at TENANTS expense. The monthly Landscaping fee shall be (Monthly Fee). Landscaping fee shall be considered additional rent. LANDLORD reserves the right to terminate this service with 7 days written notice.

    RESIDENTS INITIALS: ( WG ), (_____), (_____), (_____)

    ☑ Tenant agrees to mow, water, and keep the grass, lawn, flowers and shrubbery thereon in good order and condition, applying fertilizers and weed retardant as needed. If there is a failure of Tenant to keep the landscaping in good order and to follow these guidelines, Landlord reserves the right to hire a landscaping service at Tenant's expense (after a 7-day notice to perform covenant).

    Landlord reserves the right to restore the landscaping to its initial condition, as it was at the time Tenant began occupancy, or if improved during Tenant's occupancy, to the level of such improvement. Restoration will be at Tenant's expense.

35. **SPECIAL PROVISIONS:**        (Tenant Security Deposit Paid by Jetty in the amount of $1,875.00.)

ACCEPTANCE BY FACSIMILE BY ANY OF THE PARTIES SHALL CONSTITUTE VALID BINDING ACCEPTANCE OF THIS LEASE AGREEMENT AND ITS ADDENDA:

Tenant # 1 Signature: _By: William Haywood Gordon, agent_ _without Prejudice. All Rights Reserved_      Tenant # 2 Signature: _____

Date Signed: _5/31/2021_                                Date Signed: _____

Printed Name: _William Gordon_                          Printed Name: _____

By: Transcendent Electra Management, LLC.
    Agent for the Owner

Signature of Agent for the Owner: _Felicia Walters_
                                   ┌─ DocuSigned by:
                                   └─ 48DC34453C9C40E...

Dates Signed: _5/27/2022_

Printed Name: _Felicia Walters_

Landlord's Initials: _FC_ _____      Tenant's Initials: _WJ_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

## EARLY TERMINATION ADDENDUM

This Addendum is agreed to and shall be made part of the Lease Agreement between (ET-8 LP), through its agent **Transcendent Electra Management, LLC,** and (William Gordon) (TENANT) for the premises located at (117 Martin Mill Trl Warner Robbins, GA 31093).

Upon the early termination of the Lease, LANDLORD may charge liquidated damages or an early termination fee to TENANT, whichever is chosen by TENANT at time of lease signing.  The TENANT may choose to pay a fixed amount or allow the LANDLORD to seek damages as provided by law.  If no choice is made by TENANT, LANDLORD will seek damages as provided by law.

TENANT shall mark **only one choice**:

☑ TENANT agrees, as provided in the Lease, to pay **(2 Months of Rent)** (an amount that does not exceed two month's rent) as liquidated damages or an early termination fee if TENANT elects to terminate the Lease, and LANDLORD waives the right to seek additional rent beyond the month in which LANDLORD retakes possession.

☐ TENANT does not agree to liquidated damages or an early termination fee, and TENANT acknowledges that LANDLORD may seek damages as provided by law.

Except as expressly modified by this Addendum, all terms and conditions of the Lease remain unchanged, and the provisions of the Lease are applicable to the fullest extent not inconsistent with this Addendum. If a conflict between the terms of this Addendum and the Lease exists, the terms of this Addendum shall control the matters specifically governed by this Addendum. If any provision of this Addendum is invalid or unenforceable under applicable law, such provision shall be amended to comply with such law. The reformation of any provision of this Addendum shall not invalidate this Addendum or the Lease. An invalid provision that cannot be reformed shall be severed and the remaining portions of this Addendum shall be enforced. Any breach of the terms of this Addendum shall constitute a breach of the Lease to the same extent and with the same remedies to Landlord as provided in the Lease or this Addendum or otherwise available at law or equity.

Tenant # 1 Signature: _Without Prejudice, All Rights Reserved By: William Haymond : Gordon_ Tenant # 2 Signature: _____

Date Signed: _5/31/2021_                     Date Signed: _____

Printed Name: _William Gordon_____          Printed Name: _____


By: Transcendent Electra Management, LLC,
    Agent for the Owner
Signature/Printed Name of Agent for the Owner: _Felicia Walters_____
                                                 48DC34453C9C40E...
Date Signed: _5/27/2022_____


Landlord's Initials: _TC_____          Tenant's Initials: _WH_____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

§ 44-7-1. Creation of landlord and tenant relationship; rights of tenant; construction of lease for less than five years
§ 44-7-2. Parol contract creating landlord and tenant relationship; certain provisions prohibited; effect of provision for attorney's fees
§ 44-7-3. Disclosure of ownership and agents; effect of failure to comply
§ 44-7-4. Local ordinances relating to security of premises occupied by tenants; cumulative effect of this Code section
§ 44-7-5. When implied contract to pay rent arises
§ 44-7-6. Tenancy at will -- Creation when no time period specified
§ 44-7-7. Tenancy at will -- Notice required for termination
§ 44-7-8. Tenancy at will -- Right of tenant to emblements
§ 44-7-9. Estoppel to dispute landlord's title or attorn to another
§ 44-7-10. Delivery of possession at end of term; summary remedy
§ 44-7-11. Specific rights of tenants
§ 44-7-12. Removal of trade fixtures during term; when abandoned
§ 44-7-13. Landlord's duties as to repairs and improvements
§ 44-7-14. Tort liability of landlord
§ 44-7-14.1. Landlord's duties as to utilities
§ 44-7-15. Effect of destruction of tenement on obligation to pay rent
§ 44-7-16. Accrual of interest on rent owed
§ 44-7-17. Exemption from liens against tenant of crops paid as rent
§ 44-7-18. Effect of leases for purposes of prostitution or assignation
§ 44-7-19. Restrictions on rent regulation by local governments

§ 44-7-20. Notification to prospective tenant of property's propensity toward GAooding

§ 44-7-21. Written brokerage agreement as binding obligation; notice of commission rights form
§ 44-7-22. Termination of a residential rental agreement by a service member
§ 44-7-23. Termination of residential lease after issuance of civil family violence order or criminal family violence order; notice; occupancy
§ 44-7-30. Definitions
§ 44-7-31. Placement of security deposit in trust in escrow account; notice to tenant of account location
§ 44-7-32. Surety bond in lieu of escrow account; withdrawal of surety; fees; liability of clerk of superior court
§ 44-7-33. Lists of existing defects and damages during tenancy; inspection of premises by landlord upon termination of lease and vacation or surrender of premises; right of tenant to inspect and dissent; action to recover security deposit
§ 44-7-34. Return of security deposit; grounds for retention of part; delivery of statement and sum due to tenant; unclaimed deposit; court determination of disposition of deposit
§ 44-7-35. Remedies for landlord's noncompliance with article
§ 44-7-36. Certain rental units exempt from article
§ 44-7-37. Liability for rent of military personnel receiving change of duty orders
§ 44-7-49. "Writ of possession" defined
§ 44-7-50. Demand for possession; procedure upon a tenant's refusal; concurrent issuance of federal lease termination notice
§ 44-7-51. Issuance of summons; service; time for answer; defenses and counterclaims
§ 44-7-52. When tender of payment by tenant serves as complete defense
§ 44-7-53. When writ of possession issued; trial of issues; possession pending trial
§ 44-7-54. Payment of rent and utility payments into court; issuance of writ upon failure to pay; disposition of funds
§ 44-7-55. Judgment; writ of possession; landlord's liability for wrongful conduct; distribution of funds paid into court; personal property
§ 44-7-56. Appeal; possession and payment of rent pending appeal
§ 44-7-58. False statements in affidavit or answer; penalty

Landlord's Initials: ___TC___          Tenant's Initials: ___WH___

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

**O.C.G.A. § 44-7-1**

**§ 44-7-1. Creation of landlord and tenant relationship; rights of tenant; construction of lease for less than five years**

(a) The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. In such a case, no estate passes out of the landlord and the tenant has only a usufruct which may not be conveyed except by the landlord's consent and which is not subject to levy and sale.

(b) All renting or leasing of real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, to pass no estate out of the landlord, and to give only the usufruct unless the contrary is agreed upon by the parties to the contract and is so stated in the contract.

**O.C.G.A. § 44-7-2**

**§ 44-7-2. Parol contract creating landlord and tenant relationship; certain provisions prohibited; effect of provision for attorney's fees**

(a) Contracts creating the relationship of landlord and tenant for any time not exceeding one year may be by parol.

(b) In any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in the following provisions of law:

(1) Code Section 44-7-13, relating to the duties of a landlord as to repairs and improvements;
(2) Code Section 44-7-14, relating to the liability of a landlord for failure to repair;
(3) Ordinances adopted pursuant to Code Section 36-61-11;
(4) Article 3 of this chapter, relating to proceedings against tenants holding over;
(5) Article 4 of this chapter, relating to distress warrants;
(6) Article 2 of this chapter, relating to security deposits; and
(7) Any applicable provision of Chapter 11 of Title 9 which has not been superseded by this chapter.

(c) A provision for the payment by the tenant of the attorney's fees of the landlord upon the breach of a rental agreement by the tenant, which provision is contained in a contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place shall be void unless the provision also provides for the payment by the landlord of the attorney's fees of the tenant upon the breach of the rental agreement by the landlord.

**O.C.G.A. § 44-7-3**

**§ 44-7-3. Disclosure of ownership and agents; effect of failure to comply**

(a) At or before the commencement of a tenancy, the landlord or an agent or other person authorized to enter into a rental agreement on behalf of the landlord shall disclose to the tenant in writing the names and addresses of the following persons:

(1) The owner of record of the premises or a person authorized to act for and on behalf of the owner for the purposes of serving of process and receiving and receipting for demands and notice; and
(2) The person authorized to manage the premises.

In the event of a change in any of the names and addresses required to be contained in such statement, the landlord shall advise each tenant of the change within 30 days after the change either in writing or by posting a notice of the change in a conspicuous place.

(b) A person who enters into a rental agreement on behalf of an owner or a landlord or both and who fails to comply with the disclosure requirements in paragraphs (1) and (2) of subsection (a) of this Code section becomes an agent of the owner or the landlord or both for serving of process and receiving and receipting for notices and demands; for performing the obligations of the landlord under this chapter; and for expending or making available, for the purpose of fulfilling such obligations, all rent collected from the premises.

**O.C.G.A. § 44-7-4**

**§ 44-7-4. Local ordinances relating to security of premises occupied by tenants; cumulative effect of this Code section**

(a) Municipalities and counties may establish by local ordinance minimum security standards not in conﬂict with applicable fire codes to prevent the unauthorized entry of premises occupied by a tenant as a dwelling place and may require landlords to comply with such standards.

Landlord's Initials: TC _____          Tenant's Initials: WM _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

(b) This Code section shall be cumulative to and shall not prohibit the enactment of other general and local laws, rules and regulations of state or local agencies, and local ordinances on this subject.
O.C.G.A. § 44-7-5

§ 44-7-5. When implied contract to pay rent arises
When, in an action for rent, title is shown in the plaintiff and occupation by the defendant is proved, an obligation to pay rent is generally implied. However, if the entry of the defendant on the premises was not under the plaintiff or if the possession of the defendant is adverse to the plaintiff, no such implication arises.

O.C.G.A. § 44-7-6

§ 44-7-6. Tenancy at will -- Creation when no time period specified
Where no time is specified for the termination of a tenancy, the law construes it to be a tenancy at will.

O.C.G.A. § 44-7-7

§ 44-7-7. Tenancy at will -- Notice required for termination
Sixty days' notice from the landlord or 30 days' notice from the tenant is necessary to terminate a tenancy at will.

O.C.G.A. § 44-7-8

§ 44-7-8. Tenancy at will -- Right of tenant to emblements
The tenant at will is entitled to his emblements if the crop is sowed or planted before the landlord gives him notice of termination of the tenancy, if the tenancy is terminated by the judicial sale of the estate by the landlord or by death of the landlord or tenant, or if for any other cause the tenancy is suddenly terminated.

O.C.G.A. § 44-7-9

§ 44-7-9. Estoppel to dispute landlord's title or attorn to another
The tenant may not dispute his landlord's title or attorn to another claimant while he is in actual physical occupation, while he is performing any active or passive act or taking any position whereby he expressly or impliedly recognizes his landlord's title, or while he is taking any position that is inconsistent with the position that the landlord's title is defective.

O.C.G.A. § 44-7-10

§ 44-7-10. Delivery of possession at end of term; summary remedy
The tenant shall deliver possession to the landlord at the expiration of his term; and, if he fails or refuses to do so, a summary remedy pursuant to Article 3 of this chapter is given to the landlord.

O.C.G.A. § 44-7-11

§ 44-7-11. Specific rights of tenants
The tenant has no rights beyond the use of the land and tenements rented to him and such privileges as are necessary for the enjoyment of his use. He may not cut or destroy growing trees, remove permanent fixtures, or otherwise injure the property. He may use dead or fallen timber for firewood and the pasturage for his cattle.

O.C.G.A. § 44-7-12

§ 44-7-12. Removal of trade fixtures during term; when abandoned
During the term of his tenancy or any continuation thereof or while he is in possession under the landlord, a tenant may remove trade fixtures erected by him. After the term and his possession are ended, any trade fixtures remaining will be regarded as abandoned for the use of the landlord and will become the landlord's property.

O.C.G.A. § 44-7-13

§ 44-7-13. Landlord's duties as to repairs and improvements
The landlord must keep the premises in repair. He shall be liable for all substantial improvements placed upon the premises by his consent.

O.C.G.A. § 44-7-14

§ 44-7-14. Tort liability of landlord
Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided,

Landlord's Initials: TL _____    Tenant's Initials: WAJ _____

DocuSign Envelope ID: 6F33DA3E-1B49-44DB-8708-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

## O.C.G.A. § 44-7-14.1
### § 44-7-14.1. Landlord's duties as to utilities
(a)  As used in this Code section, the term "utilities" means heat, light, and water service.
(b)  It shall be unlawful for any landlord knowingly and willfully to suspend the furnishing of utilities to a tenant until after the final disposition of any dispossessory proceeding by the landlord against such tenant.
(c)  Any person who violates subsection (b) of this Code section shall, upon conviction, be assessed a fine not to exceed $500.00.

## O.C.G.A. § 44-7-15
### § 44-7-15. Effect of destruction of tenement on obligation to pay rent
The destruction of a tenement by fire or the loss of possession by any casualty not caused by the landlord or from a defect of his title shall not abate the rent contracted to be paid.

## O.C.G.A. § 44-7-16
### § 44-7-16. Accrual of interest on rent owed
All contracts for rent shall bear interest from the time the rent is due.

## O.C.G.A. § 44-7-17
### § 44-7-17. Exemption from liens against tenant of crops paid as rent
When it is agreed that the tenant shall pay to the landlord as rent a part of the crop produced on the lands rented from the landlord and the tenant, in good faith, delivers the part of the crop agreed on in discharge of his rent, such part of the crop so delivered shall be discharged from the lien of any judgment, decree, or other process whatsoever against the tenant.

## O.C.G.A. § 44-7-18
### § 44-7-18. Effect of leases for purposes of prostitution or assignation
(a)  As used in this Code section, the term:
(1)  "Assignation" means the making of any appointment or engagement for prostitution or any act in furtherance of such appointment or engagement.
(2)  "Prostitution" means the offering or giving of the body for sexual intercourse, sex perversion, obscenity, or lewdness for hire.
(3)  "Tourist camp" means any temporary or permanent buildings, tents, cabins or structures, or trailers or other vehicles which are maintained, offered, or used for dwelling or sleeping quarters for pay.
(b)  All leases and agreements letting, subletting, or renting any house, place, building, tourist camp, or other structure for the purpose of prostitution or assignation shall be void.

## O.C.G.A. § 44-7-19
### § 44-7-19. Restrictions on rent regulation by local governments
No county or municipal corporation may enact, maintain, or enforce any ordinance or resolution which would regulate in any way the amount of rent to be charged for privately owned, single-family or multiple-unit residential rental property. This Code section shall not be construed as prohibiting any county or municipal corporation, or any authority created by a county or municipal corporation for that purpose, from regulating in any way property belonging to such county, such municipal corporation, or such authority from entering into any agreements with private persons, which agreements regulate the amount of rent to be charged for such rental properties.

## O.C.G.A. § 44-7-20
### § 44-7-20. Notification to prospective tenant of property's propensity toward GAooding
When the owner of real property, either directly or through an agent, seeks to lease or rent that property for residential occupancy, prior to entering a written agreement for the leasehold of that property, the owner shall, either directly or through an agent, notify the prospective tenant in writing of the property's propensity of GAooding if GAooding has damaged any portion of the living space covered by the lease or attachments thereto to which the tenant or the tenant's resident relative has sole and exclusive use under the written agreement at least three times during the five-year period immediately preceding the date of the lease. An owner failing to give such notice shall be liable in tort to the tenant and the tenant's family residing on the

Landlord's Initials _____    Tenant's Initials _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

leased premises for damages to the personal property of the lessee or a resident relative of the lessee which is proximately caused by GAooding which occurs during the term of the lease. For purposes of this Code section, GAooding is defined as the inundation of a portion of the living space covered by the lease which was caused by an increased water level in an established water source such as a river, stream, or drainage ditch or as a ponding of water at or near the point where heavy or excessive rain fell. This Code section shall apply only to leaseholds entered into on or after July 1, 1995.

### O.C.G.A. § 44-7-21
**§ 44-7-21. Written brokerage agreement as binding obligation; notice of commission rights form**
(a) Where a landlord or tenant has entered into a written brokerage commission agreement for the payment of compensation or promise of payment to a real estate broker in consideration of brokerage services rendered in connection with the consummation of a lease, then, notwithstanding any rule or construction of law under which such written brokerage commission agreement might otherwise be considered the personal obligation of the original landlord or tenant specifically named in the lease, such written brokerage commission agreement shall, pursuant to the terms of this Code section, constitute a binding contractual obligation of such landlord or tenant, as the case may be, and of their respective grantees, successors, and assigns. Upon any sale, transfer, assignment, or other disposition, including, without limitation, by reason of the enforcement of any mortgage, lien, deed to secure debt, or other security instrument, of a landlord's interest in real property or upon any sale, assignment, transfer, or other disposition of a tenant's leasehold interest, the succeeding party shall be bound for all obligations occurring after the sale, transfer, assignment, or other disposition with the same effect as if such succeeding party had expressly assumed the landlord's or tenant's obligations relating to the written brokerage commission agreement if:
(1) A written brokerage commission agreement is incorporated into the lease;
(2) The real estate broker has complied with subsection (b) of this Code section;
(3) The succeeding party assumes the benefits of the tenancy, rental amount, and term of the lease; and
(4) The written brokerage commission agreement has not been waived in writing by the broker.
The conveyance or transfer of the real property coupled with the continuing assumption of the tenancy, rental amount, and term of said lease shall constitute conclusive evidence of the succeeding landlord's or tenant's agreement to pay such periodic commission payments under the written brokerage commission agreement.
(b) A real estate broker shall be entitled to the protections afforded by this Code section only upon the broker's recording a notice of commission rights in the deed records in the office of the clerk of the superior court in the county in which the real property or leasehold interest is located within 30 days of the execution of the lease incorporating the written brokerage commission agreement.
(c) The real estate broker must file a release of commission rights within 30 days of receipt of the final payment of commissions due under the written brokerage commission agreement.
(d) This Code section shall only apply to leaseholds of all or a portion of commercial real estate as that term is defined in Code Section 44-14-601 which are entered into on or after July 1, 1997.
(e) Notwithstanding any provision of this Code section to the contrary, this Code section does not create an interest in the real property which is the subject of the lease.

### O.C.G.A. § 44-7-22
**§ 44-7-22. Termination of a residential rental agreement by a service member**
(a) As used in this Code section, the term "service member" means an active duty member of the regular or reserve component of the United States armed forces, the United States Coast Guard, the Georgia National Guard, or the Georgia Air National Guard on ordered federal duty for a period of 90 days or longer.
(b) Any service member may terminate his or her residential rental or lease agreement by providing the landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the landlord's receipt of the notice if any of the following criteria are met:
(1) The service member is required, pursuant to a permanent change of station orders, to move 35 miles or more from the location of the rental premises;
(2) The service member is released from active duty or state active duty after having leased the rental premises while on active duty status and the rental premises is 35 miles or more from the service member's home of record prior to entering active duty;
(3) After entering into a rental agreement, the service member receives military orders requiring him or her to move into government quarters;

Landlord's Initials _TL_ _____          Tenant's Initials: _WM_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

(4)  After entering into a rental agreement, the service member becomes eligible to live in government quarters and the failure to move into government quarters will result in a forfeiture of the service member's basic allowance for housing;

(5)  The service member receives temporary duty orders, temporary change of station orders, or state active duty orders to an area 35 miles or more from the location of the rental premises, provided such orders are for a period exceeding 60 days; or

(6)  The service member has leased the property but prior to taking possession of the rental premises receives a change of orders to an area that is 35 miles or more from the location of the rental premises.

(c)  The notice to the landlord pursuant to subsection (b) of this Code section shall be accompanied by either a copy of the official military orders or a written verification signed by the service member's commanding officer.

(d)  In the event a service member dies during active duty, an adult member of his or her immediate family may terminate the service member's residential rental or lease agreement by providing the landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the landlord's receipt of the notice. The notice to the landlord must be accompanied by either a copy of the official military orders showing the service member was on active duty or a written verification signed by the service member's commanding officer and a copy of the service member's death certificate.

(e)  Upon termination of a rental agreement under this Code section, the service member is liable for the rent due under the rental agreement prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of the rental agreement. The service member is not liable for any other rent or damages due to the early termination of the tenancy as provided for in this Code section. Notwithstanding any provision of law to the contrary, if a service member terminates the rental agreement pursuant to this Code section 14 or more days prior to occupancy, no damages or penalties of any kind will be assessable.

(f)  The provisions of this Code section shall apply to all residential rental or lease agreements entered into on or after July 1, 2005, and to any renewals, modifications, or extensions of such agreements in effect on such date. The provisions of this Code section may not be waived or modified by the agreement of the parties under any circumstances.

O.C.G.A. § 44-7-23

§ 44-7-23.  Termination of residential lease after issuance of civil family violence order or criminal family violence order; notice; occupancy

(a)  As used in this Code section, the term:

(1)  "Civil family violence order" means:

(A)  Any protective order issued pursuant to Article 1 of Chapter 13 of Title 19, provided that the respondent was present or had notice of the hearing that resulted in the issuance of such order; or

(B)  Any ex-parte temporary protective order issued pursuant to Article 1 of Chapter 13 of Title 19, provided that it is accompanied by a police report showing a basis for such order.

(2)  "Criminal family violence order" means:

(A)  Any order of pretrial release issued as a result of an arrest for an act of family violence; or

(B)  Any order for probation issued as a result of a conviction or plea of guilty, nolo contendere, or first offender to an act of family violence.

(3)  "Family violence" shall have the same meaning as set forth in Code Section 19-13-1.

(b)  A tenant may terminate his or her residential rental or lease agreement for real estate effective 30 days after providing the landlord with a written notice of termination when a civil family violence order or criminal family violence order has been issued:

(1)  Protecting such tenant or his or her minor child; or

(2)  Protecting such tenant when he or she is a joint tenant, or his or her minor child, even when such protected tenant had no obligation to pay rent to the landlord.

(c)  The notice to the landlord pursuant to subsection (b) of this Code section shall be accompanied by a copy of the applicable civil family violence order or criminal family violence order and a copy of the police report if such order was an ex-parte temporary protective order.

(d)  Upon termination of a residential rental or lease agreement under this Code section, the tenant may occupy the real estate until the termination is effective. Such tenant shall be liable for the rent due under such agreement prorated to the effective date of the termination, payable at such time as would have otherwise been required by the terms of such agreement, and for any delinquent or unpaid rent or other sums owed to the landlord prior to the termination of such agreement. The tenant shall not be liable for any other fees, rent, or damages due to the early termination of the tenancy as provided for in this Code section.

Landlord's Initials: _____    Tenant's Initials: _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-870C-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

Notwithstanding any provision of law to the contrary, if a tenant terminates a residential rental or lease agreement pursuant to this Code section 14 or more days prior to occupancy, no damages or penalties of any kind will be assessable.

(e)  This Code section shall apply to all residential real estate rental or lease agreements entered into on or after July 1, 2018, and to any renewals, modifications, or extensions of such agreements in effect on such date. This Code section shall not be waived or modified by the agreement of the parties under any circumstances.

## O.C.G.A. § 44-7-30
### § 44-7-30. Definitions

As used in this article, the term:
(1)  "Nonrefundable fee" means any money or other consideration paid or given by a tenant to a landlord under the terms of a residential rental agreement which the parties agreed would not be refunded.
(2)  "Residential rental agreement" means a contract, lease, or license agreement for the rental or use of real property as a dwelling place.
(3)  "Security deposit" means money or any other form of security given after July 1, 1976, by a tenant to a landlord which shall be held by the landlord on behalf of a tenant by virtue of a residential rental agreement and shall include, but not be limited to, damage deposits, advance rent deposits, and pet deposits. Such term shall not include nonrefundable fees, or money or other consideration which are not to be returned to the tenant under the terms of the residential rental agreement or which were to be applied toward the payment of rent or reimbursement of services or utilities provided to the tenant.

## O.C.G.A. § 44-7-31
### § 44-7-31. Placement of security deposit in trust in escrow account; notice to tenant of account location

Except as provided in Code Section 44-7-32, whenever a security deposit is held by a landlord or such landlord's agent on behalf of a tenant, such security deposit shall be deposited in an escrow account established only for that purpose in any bank or lending institution subject to regulation by this state or any agency of the United States government. The security deposit shall be held in trust for the tenant by the landlord or such landlord's agent except as provided in Code Section 44-7-34. Tenants shall be informed in writing of the location of the escrow account required by this Code section.

## O.C.G.A. § 44-7-32
### § 44-7-32. Surety bond in lieu of escrow account; withdrawal of surety; fees; liability of clerk of superior court

(a)  As an alternative to the requirement that security deposits be placed in escrow as provided in Code Section 44-7-31, the landlord may post and maintain an effective surety bond with the clerk of the superior court in the county in which the dwelling unit is located. The amount of the bond shall be the total amount of the security deposits which the landlord holds on behalf of the tenants or $50,000.00, whichever is less. The bond shall be executed by the landlord as principal and a surety company authorized and licensed to do business in this state as surety. The bond shall be conditioned upon the faithful compliance of the landlord with Code Section 44-7-34 and the return of the security deposits in the event of the bankruptcy of the landlord or foreclosure of the premises and shall run to the benefit of any tenant injured by the landlord's violation of Code Section 44-7-34.
(b)  The surety may withdraw from the bond by giving 30 days' written notice by registered or certified mail or statutory overnight delivery to the clerk of the superior court in the county in which the principal's dwelling unit is located, provided that such withdrawal shall not release the surety from any liability existing under the bond at the time of the effective date of the withdrawal.
(c)  The clerk of the superior court shall receive a fee of $5.00 for filing and recording the surety bond and shall also receive a fee of $5.00 for canceling the surety bond. The clerk of the superior court shall not be held personally liable should the surety bond prove to be invalid.

## O.C.G.A. § 44-7-33
### § 44-7-33. Lists of existing defects and of damages during tenancy; inspection of premises by landlord upon termination of lease and vacation or surrender of premises; right of tenant to inspect and dissent; action to recover security deposit

(a)  Prior to tendering a security deposit, the tenant shall be presented with a comprehensive list of any

Landlord's Initials: _TL_ _____          Tenant's Initials: _WM_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

existing damage to the premises which shall be for the tenant's permanent retention. The tenant shall have the right to inspect the premises to ascertain the accuracy of such list prior to taking occupancy. The landlord and the tenant shall sign the list, and this shall be conclusive evidence of the accuracy of the list but shall not be conclusive as to latent defects. If the tenant refuses to sign the list, the tenant shall state specifically in writing the items on such list to which he or she dissents and shall sign such statement of dissent.

**(b)**

**(1)** Within three business days after the termination of the residential lease and vacation of the premises or the surrender and acceptance of the premises, whichever occurs first, the landlord or his or her agent shall inspect the premises and compile a comprehensive list of any damage done to the premises which is the basis for any charge against the security deposit and the estimated dollar value of such damage. The tenant shall upon request have the right to inspect the premises and such list within five business days after the termination of the residential lease and vacation of the premises or the surrender and acceptance of the premises and the inspection by the landlord or his or her agent. If the tenant is present with the landlord at the time of the inspection, the landlord and the tenant shall sign the list, and this shall be conclusive evidence of the accuracy of the list. If the tenant refuses to sign the list, he or she shall state specifically in writing the items on the list to which he or she dissents and shall sign such statement of dissent. The landlord shall then comply with the provisions of Code Section 44-7-34.

**(2)** If the tenant vacates or surrenders the premises without notifying the landlord, the landlord shall inspect the premises and compile a comprehensive list of any damage done to the premises which is the basis for any charge against the security deposit and the estimated dollar value of such damage within a reasonable time after discovering the premises has been surrendered by vacancy. The landlord shall sign the list and then comply with the provisions of Code Section 44-7-34.

**(c)** A tenant who disputes the accuracy of the final damage list compiled pursuant to subsection (b) of this Code section and provided to the tenant pursuant to Code Section 44-7-34 may bring an action in any court of competent jurisdiction in this state to recover the portion of the security deposit which the tenant believes to be wrongfully withheld for damages to the premises. The tenant's claims shall be limited to those items to which the tenant specifically dissented in accordance with this Code section. If the tenant is present for the inspection of the premises after vacancy and signs the landlord's final damage list or fails to dissent specifically in accordance with this Code section, the tenant shall not be entitled to recover the security deposit or any other damages under Code Section 44-7-35, provided that the lists required under this Code section contain written notice of the tenant's duty to sign or to dissent to the list. A tenant who did not inspect the premises after vacancy or was not present for the landlord's inspection of the premises after vacancy and, in either case, did not request a copy of the landlord's final damage list shall have the right to dispute the damages assessed by the landlord.

## O.C.G.A. § 44-7-34

**§ 44-7-34. Return of security deposit; grounds for retention of part; delivery of statement and sum due to tenant; unclaimed deposit; court determination of disposition of deposit**

**(a)** Within 30 days after obtaining possession of the premises as provided in subsection (b) of Code Section 44-7-33, a landlord shall return to the tenant the full security deposit which was deposited with the landlord by the tenant. No security deposit shall be retained to cover ordinary wear and tear which occurred as a result of the use of the premises for the purposes for which the premises were intended, provided that there was no negligence, carelessness, accident, or abuse of the premises by the tenant or members of his or her household or their invitees or guests. In the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement identifying the exact reasons for the retention thereof, which shall include the comprehensive list of damages prepared as required by Code Section 44-7-33, if the reason for retention is based on damages to the premises. When such statement is delivered, it shall be accompanied by a payment of the difference between any sum deposited and the amount retained. The landlord shall be deemed to have complied with this Code section by mailing such statement and any payment required to the last known address of the tenant via first-class mail. If the letter containing the payment is returned to the landlord undelivered and if the landlord is unable to locate the tenant after reasonable effort, the payment shall become the property of the landlord 90 days after the date the payment was mailed. Nothing in this Code section shall preclude the landlord from retaining the security deposit for nonpayment of rent or of fees for late payment, for abandonment of the premises, for nonpayment of utility charges, for repair work or cleaning contracted for by the tenant with third parties, for unpaid pet fees, or for actual damages caused by the tenant's breach, provided that the landlord attempts to mitigate the actual damages.

**(b)** In any court action in which there is a determination that neither the landlord nor the tenant is entitled to

Landlord's Initials: _____    Tenant's Initials: _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

all or a portion of a security deposit under this article, the judge or the jury, as the case may be, shall determine what would be an equitable disposition of the security deposit; and the judge shall order the security deposit paid in accordance with such disposition.

**O.C.G.A. § 44-7-35**
**§ 44-7-35. Remedies for landlord's noncompliance with article**
**(a)** A landlord shall not be entitled to retain any portion of a security deposit if:
**(1)** The security deposit was not deposited in an escrow account in accordance with Code Section 44-7-31 or a surety bond was not posted in accordance with Code Section 44-7-32;
**(2)** The initial damage list required by subsection (a) of Code Section 44-7-33 was not made and presented to the tenant as required by such subsection; and
**(3)** The final damage list required by subsection (b) of Code Section 44-7-33 was not compiled and made available to the tenant as required by such subsection.
**(b)** The failure of a landlord to provide the lists and written statements within the time periods specified in Code Section 44-7-34 shall work a forfeiture of all the landlord's rights to withhold any portion of the security deposit or to bring an action against the tenant for damages to the premises.
**(c)** Any landlord who fails to return any part of a security deposit which is required to be returned to a tenant pursuant to this article shall be liable to the tenant in the amount of three times the sum improperly withheld plus reasonable attorney's fees; provided, however, that the landlord shall be liable only for the sum erroneously withheld if the landlord shows by the preponderance of the evidence that the withholding was not intentional and resulted from a bona fide error which occurred in spite of the existence of procedures reasonably designed to avoid such errors.

**O.C.G.A. § 44-7-36**
**§ 44-7-36. Certain rental units exempt from article**
Code Sections 44-7-31, 44-7-32, 44-7-33, and 44-7-35 shall not apply to rental units which are owned by a natural person if such natural person, his or her spouse, and his or her minor children collectively own ten or fewer rental units; provided, however, that this exemption does not apply to units for which management, including rent collection, is performed by third persons, natural or otherwise, for a fee.

**O.C.G.A. § 44-7-37**
**§ 44-7-37. Liability for rent of military personnel receiving change of duty orders**
Notwithstanding any other provision of this chapter, if a person is on active duty with the United States military and enters into a residential lease of property for occupancy by that person or that person's immediate family and subsequently receives permanent change of station orders or temporary duty orders for a period in excess of three months, any liability of the person for rent under the lease may not exceed:
**(1)** Thirty days' rent after written notice and proof of the assignment are given to the landlord; and
**(2)** The cost of repairing damage to the premises caused by an act or omission of the tenant.

**O.C.G.A. § 44-7-49**
**§ 44-7-49. "Writ of possession" defined**
As used in this article, the term "writ of possession" means a writ issued to recover the possession of land or other property and such writ shall not contain restrictions, responsibilities, or conditions upon the landlord in order to be placed in full possession of the land or other property.

**O.C.G.A. § 44-7-50**
**§ 44-7-50. Demand for possession; procedure upon a tenant's refusal; concurrent issuance of federal lease termination notice**
**(a)** In all cases when a tenant holds possession of lands or tenements over and beyond the term for which they were rented or leased to such tenant or fails to pay the rent when it becomes due and in all cases when lands or tenements are held and occupied by any tenant at will or sufferance, whether under contract of rent or not, when the owner of such lands or tenements desires possession of such lands or tenements, such owner may, individually or by an agent, attorney in fact, or attorney at law, demand the possession of the property so rented, leased, held, or occupied. If the tenant refuses or fails to deliver possession when so demanded, the owner or the agent, attorney at law, or attorney in fact of such owner may immediately go before the judge of the superior court, the judge of the state court, or the clerk or deputy clerk of either court, or the judge or the clerk or deputy clerk of any other court with jurisdiction over the subject matter, or a magistrate in the district where the land lies and make an affidavit under oath to the facts. The affidavit may

Landlord's Initials: ___TL___  _____        Tenant's Initials: ___WJK___  _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

likewise be made before a notary public.

**(b)** If issued by a public housing authority, the demand for possession required by subsection (a) of this Code section may be provided concurrently with the federally required notice of lease termination in a separate writing.

**O.C.G.A. § 44-7-51**

**§ 44-7-51. Issuance of summons; service; time for answer; defenses and counterclaims**

**(a)** When the affidavit provided for in Code Section 44-7-50 is made, the judge of the superior court, the state court, or any other court with jurisdiction over the subject matter or the judge, clerk, or deputy clerk of the magistrate court shall grant and issue a summons to the sheriff or his deputy or to any lawful constable of the county where the land is located. A copy of the summons and a copy of the affidavit shall be personally served upon the defendant. If the sheriff is unable to serve the defendant personally, service may be had by delivering the summons and the affidavit to any person who is sui juris residing on the premises or, if after reasonable effort no such person is found residing on the premises, by posting a copy of the summons and the affidavit on the door of the premises and, on the same day of such posting, by enclosing, directing, stamping, and mailing by first-class mail a copy of the summons and the affidavit to the defendant at his last known address, if any, and making an entry of this action on the affidavit filed in the case.

**(b)** The summons served on the defendant pursuant to subsection (a) of this Code section shall command and require the tenant to answer either orally or in writing within seven days from the date of the actual service unless the seventh day is a Saturday, a Sunday, or a legal holiday, in which case the answer may be made on the next day which is not a Saturday, a Sunday, or a legal holiday. If the answer is oral, the substance thereof shall be endorsed on the dispossessory affidavit. The answer may contain any legal or equitable defense or counterclaim. The landlord need not appear on the date of the tenant's response. The last possible date to answer shall be stated on the summons.

**(c)** If service is by posting a copy of the summons and the affidavit on the door of the premises and mailing a copy of the summons and the affidavit to the defendant, as provided in subsection (a) of this Code section, the court shall have jurisdiction to enter a default judgment for possession of the premises in the absence of an answer being filed, but in such instance a default judgment for money owed may not be entered unless the defendant files an answer or otherwise makes an appearance in the case.

**O.C.G.A. § 44-7-52**

**§ 44-7-52. When tender of payment by tenant serves as complete defense**

**(a)** Except as provided in subsection (c) of this Code section, in an action for nonpayment of rent, the tenant shall be allowed to tender to the landlord, within seven days of the day the tenant was served with the summons pursuant to Code Section 44-7-51, all rents allegedly owed plus the cost of the dispossessory warrant. Such a tender shall be a complete defense to the action; provided, however, that a landlord is required to accept such a tender from any individual tenant after the issuance of a dispossessory summons only once in any 12-month period.

**(b)** If the court finds that the tenant is entitled to prevail on the defense provided in subsection (a) of this Code section and the landlord refused the tender as provided under subsection (a) of this Code section, the court shall issue an order requiring the tenant to pay to the landlord all rents which are owed by the tenant and the costs of the dispossessory warrant within three days of said order. Upon failure of the tenant to pay such sum, a writ of possession shall issue. Such payment shall not count as a tender pursuant to subsection (a) of this Code section.

**(c)** For a tenant who is not a tenant under a residential rental agreement as defined in Code Section 44-7-30, tender and acceptance of less than all rents allegedly owed plus the cost of the dispossessory warrant shall not be a bar nor a defense to an action brought under Code Section 44-7-50 but shall, upon proof of same, be considered by the trial court when awarding damages.

**O.C.G.A. § 44-7-53**

**§ 44-7-53. When writ of possession issued; trial of issues; possession pending trial**

**(a)** If the tenant fails to answer as provided in subsection (b) of Code Section 44-7-51, the court shall issue a writ of possession instanter notwithstanding Code Section 9-11-55 or Code Section 9-11-62. The court, without the intervention of a jury, shall not require any further evidence nor hold any hearings and the plaintiff shall be entitled to a verdict and judgment by default for all rents due as if every item and paragraph of the affidavit provided for in Code Section 44-7-50 were supported by proper evidence.

**(b)** If the tenant answers, a trial of the issues shall be had in accordance with the procedure prescribed for civil actions in courts of record except that if the action is tried in the magistrate court the trial shall be had in accordance with the procedures prescribed for that court. Every effort should be made by the trial court to

Landlord's Initials ___TL___ _____          Tenant's Initials: ___WH___ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

expedite a trial of the issues. The defendant shall be allowed to remain in possession of the premises pending the final outcome of the litigation; provided, however, that, at the time of his answer, the tenant must pay rent into the registry of the court pursuant to Code Section 44-7-54.

**O.C.G.A. § 44-7-54**
**§ 44-7-54. Payment of rent and utility payments into court; issuance of writ upon failure to pay; disposition of funds**
(a) In any case where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court:
(1) All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warrant, said rent and utility payments to be paid as such become due. If the landlord and the tenant disagree as to the amount of rent, either or both of them may submit to the court any written rental contract for the purpose of establishing the amount of rent to be paid into the registry of the court. If the amount of rent is in controversy and no written rental agreement exists between the tenant and landlord, the court shall require the amount of rent to be a sum equal to the last previous rental payment made by the tenant and accepted by the landlord without written objection; and
(2) All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease allegedly owed prior to the issuance of the dispossessory warrant; provided, however, that, in lieu of such payment, the tenant shall be allowed to submit to the court a receipt indicating that payment has been made to the landlord. In the event that the amount of rent is in controversy, the court shall determine the amount of rent to be paid into court in the same manner as provided in paragraph (1) of this subsection.
(b) If the tenant should fail to make any payment as it becomes due pursuant to paragraph (1) or (2) of subsection (a) of this Code section, the court shall issue a writ of possession and the landlord shall be placed in full possession of the premises by the sheriff, the deputy, or the constable.
(c) The court shall order the clerk of the court to pay to the landlord the payments claimed under the rental contracts paid into the registry of the court as said payments are made; provided, however, that, if the tenant claims that he or she is entitled to all or any part of the funds and such claim is an issue of controversy in the litigation, the court shall order the clerk to pay to the landlord without delay only that portion of the funds to which the tenant has made no claim in the proceedings or may make such other order as is appropriate under the circumstances. That part of the funds which is a matter of controversy in the litigation shall remain in the registry of the court until a determination of the issues by the trial court. If either party appeals the decision of the trial court, that part of the funds equal to any sums found by the trial court to be due from the landlord to the tenant shall remain in the registry of the court until a final determination of the issues. The court shall order the clerk to pay to the landlord without delay the remaining funds in court and all payments of future rent made into court pursuant to paragraph (1) of subsection (a) of this Code section unless the tenant can show good cause that some or all of such payments should remain in court pending a final determination of the issues.

**O.C.G.A. § 44-7-55**
**§ 44-7-55. Judgment; writ of possession; landlord's liability for wrongful conduct; distribution of funds paid into court; personal property**
(a) If, on the trial of the case, the judgment is against the tenant, judgment shall be entered against the tenant for all rents due and for any other claim relating to the dispute. The court shall issue a writ of possession, both of execution for the judgment amount and a writ to be effective at the expiration of seven days after the date such judgment was entered, except as otherwise provided in Code Section 44-7-56.
(b) If the judgment is for the tenant, he shall be entitled to remain in the premises and the landlord shall be liable for all foreseeable damages shown to have been caused by his wrongful conduct. Any funds remaining in the registry of the court shall be distributed to the parties in accordance with the judgment of the court.
(c) Any writ of possession issued pursuant to this article shall authorize the removal of the tenant or his or her personal property or both from the premises and permit the placement of such personal property on some portion of the landlord's property or on other property as may be designated by the landlord and as may be approved by the executing officer; provided, however, that the landlord shall not be a bailee of such personal property and shall owe no duty to the tenant regarding such personal property. After execution of the writ, such property shall be regarded as abandoned.

Landlord's Initials: TL _____          Tenant's Initials: WM _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

**O.C.G.A. § 44-7-56**
**§ 44-7-56. Appeal; possession and payment of rent pending appeal**
Any judgment by the trial court shall be appealable pursuant to Chapters 2, 3, 6, and 7 of Title 5, provided that any such appeal shall be filed within seven days of the date such judgment was entered and provided, further, that, after the notice of appeal is filed with the clerk of the trial court, the clerk shall immediately notify the trial judge of the notice of appeal and the trial judge may, within 15 days, supplement the record with findings of fact and conclusions of law which will be considered as a part of the order of the judge in that case. If the judgment of the trial court is against the tenant and the tenant appeals this judgment, the tenant shall be required to pay into the registry of the court all sums found by the trial court to be due for rent in order to remain in possession of the premises. The tenant shall also be required to pay all future rent as it becomes due into the registry of the trial court pursuant to paragraph (1) of subsection (a) of Code Section 44-7-54 until the issue has been finally determined on appeal.

**O.C.G.A. § 44-7-58**
**§ 44-7-58. False statements in affidavit or answer; penalty**
Anyone who, under oath or affirmation, knowingly and willingly makes a false statement in an affidavit signed pursuant to Code Section 44-7-50 or in an answer filed pursuant to Code Section 44-7-51 shall be guilty of a misdemeanor.

Landlord's Initials: _____    Tenant's Initials: _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

# DRUG/CRIME FREE ADDENDUM

**In consideration of the execution or renewal of the lease, Owner, Management and Resident,** (117 Martin Mill Trl Warner Robbins, GA 31093) agree as follows:

1.      **Resident, any member of the Resident's household, or a guest or other person under the Resident's control shall not engage in criminal activity, including drug-related criminal activity, on, near or within sight of the rental premises.** "Drug-related criminal activity" means the illegal manufacture, sale, distribution, transportation, storage, use, or possession with intent to manufacture, sell, distribute, store, transport or use a controlled substance including <u>but not limited</u> to marijuana or cocaine and/or illegal drug paraphernalia.

2.      Resident, any member of the Resident's household, or a guest or other person under the Resident's control **shall not engage in any act intended to facilitate criminal activity,** including drug-related criminal activity, on, near or within sight of the premises.

3.      Resident or member of the household **will not permit the dwelling unit inside or out to be used for, or to facilitate criminal activity,** including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4.      Resident or member of the household will not engage in the manufacture, sale, storage, transportation, use, possession or distribution of illegal drugs and/or drug paraphernalia at any location, whether on, near or within sight of the premises or otherwise.

5.      **Resident, any member of the Resident's household, or a guest or other person under Resident's control shall not engage in any illegal activity including but not limited to prostitution, public drunkenness, lewd behavior, trespass by your guests if they have previously received a trespass warning, dangerous operation of a motor vehicle in the premises, disorderly conduct, street gang activity, battery, assault, discharging weapons, acts of violence or threats of violence, sexual crimes on or off the premises, or any breach of the lease agreement that otherwise jeopardizes the safety or welfare or any persons.**

6.      **VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL AGREEMENT AND GOOD CAUSE FOR TERMINATION OF TENANCY.** A single violation of any of the provisions of this addendum shall be deemed a serious violation and material noncompliance with the Rental Agreement. It is understood and agreed that a single violation shall be good cause for termination of the Rental Agreement. Unless otherwise provided by law, **PROOF OF VIOLATION SHALL NOT REQUIRE CRIMINAL CONVICTION,** but shall be a preponderance of the evidence.

7.      In case of conflict between the provisions of this addendum and any other provisions of the Rental Agreement, the provisions of the addendum shall govern.

Landlord's Initials: TC _____          Tenant's Initials: WJ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

## RESIDENTS INITIALS: (_____), (_____),(_____), (_____)

### Utility Addendum
Disclosure Statement of Residents' Financial Responsibility for Water, Sewer, gas, electric and Hot Water Heating Utility Expense, and Trash Collections

This Disclosure Statement (the "Utility Addendum") shall become part of the Rental Agreement ("the Lease") dated [6/1/2022]Between [ET-8 LP] and [William Gordon], Residents of [117 Martin Mill Trl Warner Robbins, GA 31093].

1. Paragraph 9, Page 3 of the Lease is amended by this Utility Addendum.
2. Notwithstanding anything contained herein to the contrary, Resident Agrees to be responsible for all utilities charged or attributable to the use of Resident's home or unit, including without limitation, Electricity, Oil and/or Gas associated with heating domestic hot water, Water, Sewer, Storm/Surface Water charges, Garbage collection and Meter Service Fees charged by the various utilities and Utility Service Companies. Resident(s) understands and acknowledges that some or all of these services are separately metered and administered by the respective utility or billing companies.
3. Electricity, Gas, domestic hot water energy and water are metered. Sewer fees may be based on Resident's metered water consumption. Garbage collection fees are allocated equally between apartment units. Residents may be charged a "New Account Fee" by the utility billing service (s) to establish an account and any utility security deposit required by the utility billing service.
4. The Property Owner shall not be responsible or liable for interruption or malfunction of any utility service.
5. Resident shall be solely responsible for all utility service charges attributed to the unit or home the Resident occupies, and Resident shall pay such charges immediately upon receipt of an invoice or other written demand for payment. All charges for utilities are considered additional rent. In the event that resident fails to pay utility service charges: (a) Resident shall be in default of this Lease; (b) Property Owner shall have the right to deduct charge from the Resident's deposit by the amount in arrears plus any associated late fees; (c) Property Owner may, at its option, pay the charges and seek recovery thereof from Resident, together with any attorney's fees or court costs plus interest on any amounts so paid at the rate of 18% per annum; (d) Property Owner may utilize any other remedies, whether in law or equity, available against Resident, including eviction, and (e) Resident agrees to pay utility or billing companies any costs it incurs to collect charges, together with attorney fees and court fees, plus 18% per annum on unpaid amounts.
6. Resident understands, acknowledges and agrees that when the Resident provides notice to the Property Owner intent to move out, the utility billing company shall generate an invoice for the Resident's estimated water, sewer and domestic hot water energy consumption, and trash collections costs, based on the Resident's move date. The water/sewer utility charges calculated for this "move-out" invoice shall utilize the Resident's water utility average daily consumption from the previous month times the number of days the Resident rented the home or unit in the move out month. The last water/sewer utility invoice "Best Estimate" amount plus any unpaid water/sewer utility fees shall fee charged against the Resident's lease and/or utility security deposit.
7. Resident agrees not to tamper with or adjust or disconnect any metering device. Violation of this provision shall allow utility billing service to recover expenses associated with restoration of meter operation and tamper detection devices. Repeated violation of this provision shall represent a material breach or default of this Utility Addendum and the Lease, and shall entitle Management to exercise all remedies available under this Lease.
8. The billing methods described herein may be changed by Property Owner by providing Resident with 60 days prior written notice and Resident acknowledges that in certain situations it is necessary to make a change to the billing method. The bill will be sent to Resident by a third-party billing provider. Resident acknowledges that the billing provider is not a public utility. Property Owner reserves the right to change the third-party billing provider at any time. Any disputes related to the computation of Resident's bills will be between the Resident and the Property Owner.
9. Each bill will include a monthly service fee of $11.99 in addition to the utility charges. This monthly service fee is for administration, billing, overhead and similar expenses and charges incurred by Property Owner for providing billing services and may be increased (with 60 days written notice provided to Resident) if Property Owner's expenses increase. Resident agrees to pay a one-time account processing fee when Resident vacates the apartment unit. This fee shall be included on Resident's final bill. This fee is for administration, billing overhead and similar expenses and charges incurred by Property Owner for processing the final bill. Resident also agrees to pay a one-time account set-up fee in the amount of $40.00 on the first bill. This fee is for administration, billing overhead and similar expenses and charges incurred by Property Owner for establishing the new account.

Without Prejudice, All rights Reserved
By-William-Haywood: Gordon 5/31/2022

_____     _____     _____
Resident Signature          Date          Resident Signature          Date
                                          Agent

Landlord's Initials [TC] _____          Tenant's Initials: _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E980

*without Prejudice All Rights Reserved*
*By: William-Haywood : Gordon, 5/31/2022*

| Resident Signature | Date | Resident Signature | Date |
|---|---|---|---|

*Tynneshia Campbell*    6/3/2022

| Property Manager | Date |
|---|---|

# Late Payment Processing

- Rent is due on the 1st and is considered late on the 2nd.

- Late fees will be assessed after the 5th of each month.  (10% of one month's rent) All rent MUST be received by the end of business on the 5th to avoid late fees.  If the 5th falls on a weekend or holiday, you can pay your rent online at https://Transcendent Electra Management, LLC-reslisting.securecafe.com/residentservices/userlogin.aspx

- We do **NOT** recommend mailing your payments, we have no control over the mail system and payments that have been **mailed MUST BE RECEIVED** before the end of business on the 5th or a late fee will apply. The day you mailed your payment, bought the money order etc. has no effect on when we charge the late fee.  If not **received** on time you will be charged.

- If rent is not paid by the 5th of the month, a 3 Day Notice will be posted the following business day.  Once the 3 Day Notice is posted NO PARTIAL PAYMENTS will be accepted.

- On or before the 15th any account with an outstanding rent balance will be sent over for Eviction.

- Once the file is sent for eviction a fee will be assessed on your tenant ledger for the eviction.

- Once the eviction is filed you will not be able to stop the eviction unless ALL charges on the tenant ledger are paid IN FULL.  This includes Rent, Late Fees, Utilities, Maintenance Fees, Eviction Fees or any other charges that have been assessed.

Property Address:  {117 Martin Mill Trl Warner Robbins, GA 31093}

*Without Prejudice, All rights Reserved*
*By: William-Haywood : Gordon 5/31/2022*

| Tenant Signature | Date | Tenant Signature | Date |
|---|---|---|---|

| Landlord's Initials: _TC_ ____ | | Tenant's Initials: _WG_ ____ |
|---|---|---|

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

Tenant Signature                  Date          Tenant Signature                  Date

*By: William Haywood : Gordon -Agent*

*5/31/2022*

*Without Prejudice, All Rights Reserved*

**(Insert Property Address)**

## Addendum to Lease - Home Information Packet

**AC/Heater**

Change the A/C filter every 30 days. Do not set the thermostat set lower than 15 degrees below the outside temperature OR 76 degrees, whichever is HIGHER. If you do, you will be taking a chance of it freezing up and damaging the system. If that happens, turn your AC off for 4 hours for it to defrost before having us call out a technician. *If Transcendent Electra Management, LLC, LLC sends a technician out to your home and there is no air because your A/C is frozen over, and/or the filter(s) are dirty, you will be responsible for full amount of service call.*

**Water System**

Keep the salt tank at least 1/2 full of salt *at all times*. Clean out the aerator tank every 60-90 days. Please make sure you pest control the area as ants do crawl into the connector box which will cause a power shortage. *Always check for ants in the pressure switch and that the GFI button on the outlet is pushed in before having us call out a technician.* (GFI buttons are located in the outlet where your well equipment is plugged in. Push in the bottom test button and then push in the top test button. The connector box is located on the pipes coming from the well equipment. Simply take off the box and tap the lid on the connector or pressure switch to knock out any dead ants that might have crawled up in the connector. *If ants are found as the cause of a pressure switch going bad, you may be charged for the part and service call due to lack of pest control and/or high grass.)*

**Septic/Drain Field**

DO NOT pour bleach, drain cleaner, *or* grease down the drains *at ANY TIME*. You are required to report running toilets to the office immediately. Be mindful of the amount of water discharged at any given time. It is very important that there are no cars, trucks, or heavy equipment on top of the septic system in the yard. This can cause the leach field to be cracked, septic to back up in the house, *or* the leach to cave in. You will be held responsible if damage is caused by any of the actions above. Please limit your laundry to 2 loads per day. Space out laundry loads and allow AT LEAST 1 hour or more between loads to ensure that you are not overloading the septic system. During the rainy season, please keep your water usage to a minimum and either wait the next day to do your laundry, or 1 load per day, if at all possible. We recommend using Rid-X once a month (or a similar product) to maintain the septic.

**Appliances**

The number one way to keep all of your appliances running efficiently is to keep them clean! Pest control is also of utmost importance as it will prevent pests from making their homes in your appliances!

- o **Stove/Oven**
  - Do not allow liquid in pots/pans to run over onto burners. This may cause a short, melted receptacle, and/or other long-term damage to the unit and you may be held responsible for the repair or replacement of the stove.
  - When using heavy-bottom pans (i.e. cast iron, copper-infused stainless steel, etc.,) do not turn your burners on high. The extended high heat can cause permanent damage to the unit and you may be held responsible.
  - Please remove stuck on food immediately, replace drip pans regularly, and clean the coils periodically with mild soapy water (without submerging burners completely under water).
  - Clean metal vent filter regularly
  - Clean around knobs and all surfaces regularly
  - Clean the oven regularly (Glass-top stoves may require specialized cleaning)
- o **Refrigerator**
  - Clean coil gently every 3 months using a cloth or duster (coils can be located either behind the unit, or at the bottom front) If the coil is located on the bottom front, remove the grill to access.
  - Wipe out the drip pan
  - See the manual for the refrigerator to clean the drain hole
  - Wipe down gaskets/seals regularly with white vinegar solution
- o **Dishwasher**

Landlord's Initials: _TC_ _____          Tenant's Initials: _WM_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

- Periodically, run a full cycle with 1 cup of white vinegar. This will deodorize the unit and kill bacteria and any possible mold growth.
- Wipe down all surfaces regularly

*without Prejudice, All rights Reserved*

Tenant Signature *By: William-Haywood : Cost* Date 5/31/2022    Tenant Signature _____ Date_____

Tenant Signature _____ Date_____    Tenant Signature _____ Date_____

## Additional Stipulations:

1) Stove drip pans will be replaced by tenant, at tenant's expense, or cost will be deducted from tenant's security deposit.
2) Tenant is responsible for any screen damage, broken windows, or door locks caused by tenant's negligence, at tenant's expense.
3) Tenant is responsible for changing A/C filters and/or pool filters. If a service call is required and repair is due to tenant not changing A/C and/or pool filter, tenant would be responsible for repairs.
4) Tenant agrees to remove all nails and return walls to original condition.
5) Tenant, at tenant's expense, is responsible for general maintenance of well treatment equipment.
6) Tenant is responsible for all clogged drains, garbage disposal and toilet stoppages attributable to tenant, at tenant's expense.
7) Tenant has received _(2) keys (2) remotes (0) alarm pad_.
8) Tenant acknowledges receipt of Home Info Packet.
9) Tenant must notify Transcendent Electra Management, LLC, LLC of current telephone numbers and any changes in tenant's vehicles. Tenant agrees to do so in writing.
10) Tenant acknowledges that in the event the property should be connected to city water and/or sewer, tenant would be responsible for any and all connection charges/deposits and all monthly water charges payable upon receipt of bills as additional rent.
11) Tenant agrees that smoking is NOT permitted on the premises by tenant and/or tenant's guests. In the event the premises are damaged in any way due to smoke, tenant agrees they will be fully responsible for eradication of smoke-related odors and/or repair of damage due to smoke. Tenant agrees that smoke related damages will in no way be considered ordinary wear and tear. Smoking is only permitted outside the rental unit or on the balcony/lanai areas of the rental unit if applicable.
12) Tenant is responsible to pay any false alarms through security system.
13) Tenant agrees to maintain yard, shrubs, and trees on property.
14) Tenant acknowledges if washer and/or dryer have been left at premises, the Landlord will not maintain, repair, or replace.
15) Tenant acknowledges all rent, fees, or deposits paid are to be paid by money order or cashier's check or online.
16) Tenant is responsible for minor repairs, those considered "wear and tear" on property. This could include, but is not limited to, things like toilet handles and Flappers, faucet handles, closet doors, door knobs, caulk, AC maintenance, etc. Landlord shall be responsible for major maintenance or major replacement of equipment. Major maintenance or major replacement means a repair that costs MORE than $200.00.
17) At expiration of this agreement, Tenant agrees to have the carpeting cleaned professionally upon move out and provide a copy of the receipt to Landlord or will incur a minimum carpet cleaning charge to be deducted from the security deposit in the amount of $200.00. In the event all keys are not returned upon move out, there will be a minimum charge to be deducted from the security deposit in the amount of $100.00. In addition to any cleaning charges or any other charges due under the terms of this lease, Tenant agrees to a mandatory minimum unit cleaning charge to be deducted from the security deposit in the amount of $200.00.
18) Tenant acknowledges in the event this lease becomes a month-to-month agreement, the rental amount will increase an additional $100.00 per month.
19) Tenant acknowledges that they are responsible for all pest control with the exception of termites.
20) Occasional overnight guests are permitted. An occasional overnight guest is one who does not stay more than 2 nights in any calendar month (If left blank, 2). Landlord's written approval is required to allow anyone else to occupy the Premises.
21) Owner is not responsible for replacing mailboxes. One will be provided at move in and tenant will be responsible for any repairs or replacements needed after that.
22) Tenant agrees that they have fully inspected the premises and accepts the condition of the premises in "as is" condition with no warranties or promises express or implied.
23) Tenant agrees that all monies paid will be applied to the oldest charges first.

If you have any questions about these responsibilities or do not understand the above instructions, it is your responsibility to call the office for more details. If any of the above systems fail due to the tenants not following these rules, they will be held fully responsible for repair. You will be held responsible for any service call charge resulting from a tripped breaker or GFI/GFCI, dirty air filters, or any damage or repair, that resulted in your responsibility or were caused by you/your guests, deemed necessary by our vendor or agency.

Landlord's Initials: _TC_ _____    Tenant's Initials: _WH_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

*Without Prejudice, All Rights Reserved*

Tenant Signature By: William Hammond : Gordon Agent   Date 5/31/2022   Tenant Signature _____ Date_____

Tenant Signature _____ Date_____   Tenant Signature _____ Date_____

## What is a Septic System?

A septic system processes and neutralizes liquid and solid waste that exits your home from toilets, sinks, and other plumbing fixtures. A conventional septic system consists of three main parts:

1. Septic tank
2. Drainfield
3. Soil beneath the drainfield

- Temporary watertight holding tank for waste, often buried near the house. Tanks have a capacity of 1,000 or more gallons
- Solids settle to the bottom of the tank and form a layer of sludge.
- Liquid waste exits near the top of the tank and flows through distribution pipes in the drainfield.
- Multiple, gravel-lined trenches, usually 2-3 feet deep, where liquid that exits the tank flows. The drainfield is positioned so that gravity allows liquid waste to flow and become distributed into the area.
- Perforated distribution pipes are placed in drainfield trenches, ensuring that liquid waste can drain over a large area. The bottoms of the trenches are at least 12 inches above the groundwater table, sometimes more depending on the type of soil, so that waste is neutralized before entering.
- The drainfield is covered with soil, before the system is used.
- Natural components of soil neutralize bacteria and chemicals before they reach groundwater or nearby rivers and lakes. The ideal soil is aerobic, meaning it contains a good amount of cleansing oxygen, and is not saturated with water.

## Don't Overload the Septic Tank and Drainfield

- Check faucets and toilets for leaks; make repairs if necessary.
- Use aerators on faucets and flow-reducer nozzles on showers to help lower water consumption.
- Reduce water levels for small loads of laundry.
- Wait until the dishwasher is full to run it.
- Use a displacer to reduce the amount of water needed to flush the toilet.
- Please limit your laundry to 2 loads per day
- Space out laundry loads & allow AT LEAST 1 hour between loads to ensure that you are not overloading the septic system.
- During the rainy season, please keep your water usage to a minimum and either wait the next day to do your laundry, or 1 load per day, if at all possible.

## The Toilet Isn't a Garbage Disposal...BE CAREFUL WHAT YOU GAUSH!

- Never flush cat litter, disposable diapers, sanitary napkins, tampons, paper towels, facial tissues, "flushable" wipes (even if the package states that it is "Septic Safe"), coffee grounds, or cigarette butts and filters. They will clog your septic tank very quickly. Please only flush non-quilted toilet paper that also states that it is "Septic Safe" on the package. Do not flush quilted toilet paper (i.e., Angel Soft, Charmin, etc.), even if the package states that it is "Septic Safe". flushing any of the above prohibited items may cause severe damage to the septic system, causing it to clog, back up, need to be pumped, etc.  **If any of the above prohibited items are found in the septic system, you may be charged for the cost of any repairs, pump-outs, etc.**

## Use Garbage Disposals Wisely

A garbage disposal can double the amount of solids added to a septic tank.
- We do not dispatch vendors for clogs in the sink due to garbage disposals. Any vendor that is dispatched but finds that any damage or clog is due to tenant misuse, neglect, etc. will hold the tenant responsible and will be invoiced accordingly.

## Minimize Heavy Duty Cleaners

- Overuse of heavy cleaners kill beneficial bacteria in the septic tank, so solids won't break down as well.

## Do Not Pour Grease Down the Drain AT ANY TIME!

- Grease will clog the septic drainfield, making it impossible for soil to absorb liquids. If that happens you'll need a new drainfield and you may be charged if it is determined that you are at fault.

## Avoid Hazardous Chemicals

Landlord's Initials: _TC_ _____          Tenant's Initials: _WM_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

- Varnish, paint thinners, motor oils, gasoline and other similar chemicals can ruin your system and are a hazard to groundwater. Dispose of them properly.

**Protect the System from Damage**
- Do not drive over the drainfield, build a structure on top of it, or cover it with concrete or asphalt.
- Plant grass on the drainfield to minimize soil erosion.
- Never attempt to open a septic tank yourself. The gases and bacteria in it are dangerous.

*Without Prejudice All Rights Reserved*

Tenant Signature *By: William Henwood: Gordons pres* Date 5/31/22        Tenant Signature _____ Date_____

Tenant Signature _____ Date_____        Tenant Signature _____ Date_____

## Helpful Hints to Assure Items Are Not Missed During Move-Out

**Interior:**
- ☐ Remove all trash and articles from interior of the home.
- ☐ Carpets MUST be professionally cleaned.
- ☐ Nail holes must be neatly patched, excessive holes or large areas of patch will result in painting charges.
- ☐ Walls, baseboards, windows, and sills have to be wiped and cleaned.
- ☐ Ceiling fans dusted and wiped.
- ☐ Light fixtures wiped and bulbs replaced if needed.
- ☐ Tile floors swept and moped.
- ☐ Verticals & blinds dusted and wiped.
- ☐ Interior windows & sliding glass doors cleaned.
- ☐ Clean A/C filters.
- ☐ All Cabinets and drawers must be cleaned inside and out through entire home.
- ☐ Appliances must be cleaned thoroughly.
- ☐ Refrigerator, Stove/Oven must be cleaned inside and out. You must pull forward and clean the GAoor.
- ☐ Replace drip pans on stove.
- ☐ All fixtures must be cleaned/sanitized.
- ☐ Mirrors & windows cleaned.
- ☐ Toilets in good repair and cleaned.
- ☐ Have professional pest control performed, if needed.

**Exterior:**
- ☐ Remove all trash from the property. Place all trash in trash cans and place out at normal trash pick-up locations.
- ☐ Place any discarded furniture at normal pick-up location.
- ☐ Lawn needs to be mowed and any over grown weeds removed.
- ☐ There can be no damages on the screens (holes or loose/ripped screening).
- ☐ Window screens installed properly.
- ☐ Salt in the salt tank and aerator tank cleaned.

## MOVE OUT PROCEDURE

Notify the Landlord's Representative of the exact date of your vacating the apartment and the date of utility turn off.

Please return keys, including mailbox or garage key (if applicable), receipt of professional carpet cleaning, along with new address and telephone on move out day. Delayed key turn in will constitute occupancy and additional rent will be due
**Overnight to :** (1170 Kane Concourse Suite 400 Bay Harbor Islands, FL 33154)
Inspection will be made 1 to 3 working days after keys are returned. The security deposit will be refunded to the tenant with 15 days after tenant's normal lease termination or vacating of premises if the property is left in move-in condition and all rents are paid to current date, as per lease agreement. If condition is not acceptable by the Landlord, you will be notified of any deductions within 30 days of vacating.
If you have any questions please feel free to call us.

Landlord's Initials: _TC_        Tenant's Initials: _WH_ _____

DocuSign Envelope ID: 6F95DA3E-7B43-44DB-8706-A7DAF774563E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

Tenant agrees to leave unit in Move-In Condition and to perform all tasks listed above upon vacating the unit. Failure to do so may result in a forfeit or deduction of the security deposit.

*Without Prejudice, All Rights Reserved*
*By: William-Haywood: Gordon - Agent   5/31/2022*

| Tenant | Date | Tenant | Date |
| --- | --- | --- | --- |

| Tenant | Date | Tenant | Date |
| --- | --- | --- | --- |

## LEASE ADDENDUM
## LIABILITY INSURANCE REQUIRED OF RESIDENT

This Addendum is agreed to and shall be made part of the Lease Agreement between (ET-8 LP) (LANDLORD), through its agent Transcendent Electra Management, LLC, and (William Gordon)(TENANT) for the premises located at (117 Martin Mill Trl Warner Robbins, GA 31093)

Acknowledgment Concerning Liability Insurance Requirement
You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own personal liability for injury, loss or damage you (or your occupants or guests) may cause others.

You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests, including but not limited to fire damage.

For the duration of your Lease Contract you must maintain a personal liability insurance policy, which provides limits of liability to third parties in an amount not less than $100,000 per occurrence. You will ensure that the liability insurance policy identifies the landlord or property management company as a "Party of Interest" or "Interested Party" (or similar language as may be available). You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods, a policy of personal liability insurance with this limit and otherwise satisfying the requirements listed below, at your sole expense.

Required Policy. You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third-parties (including damages to our property), with the minimum policy coverage amount set forth in paragraph 2 above, from a licensed insurance carrier authorized to issue such insurance in GA(state). The carrier is required to provide notice to us within 30 days of any cancellation, nonrenewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

*Without Prejudice, All Rights Reserved*

Tenant # 1 Signature: *By: William-Haywood: Gordon*   Tenant # 2 Signature: _____

Date Signed: *05/31/2022*   Date Signed: _____

Printed Name: william Gordon   Printed Name: _____

Landlord's Initials: TC   Tenant's Initials: WM

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

By: Transcendent Electra Management, LLC,
    Agent for the Owner
Signature/Printed Name of Agent for the Owner: _____

*Felicia Walters*
48DC34453C9C40E...

Date Signed: ___5/27/2022___

# Addendum - Home Assistant Concierge Services

**Property Address:** (117 Martin Mill Trl Warner Robbins, GA 31093)
**Lease Commencement Date:** (6/1/2022)

## Resident Info

*Provide all resident information for all adults (18 years or older) living in the home.*

Resident Name:William Gordon
Resident Mobile Phone:(770) 630-1724
Resident Email:williamhaywoodgordon@gmail.com

Resident Name:
Resident Mobile Phone:
Resident Email:

Resident Name:
Resident Mobile Phone:
Resident Email:

Resident Name:
Resident Mobile Phone:
Resident Email:

Resident Name:
Resident Mobile Phone:
Resident Email:

Resident Name:
Resident Mobile Phone:
Resident Email:

Landlord's Initials: TC          Tenant's Initials: WG

DocuSign Envelope ID: 8F33DA3E-1B49-44DB-8706-A7DAF774353E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

This agreement ("Agreement") is made between <u>Transcendent Electra Management, LLC</u>, a Property Management Company or a Property Owner that self manages the property described in the prior page(s), and all adult residents living in the home listed on the prior pages (collectively, "Resident"). This Agreement describes the Home Assistant Concierge services made available by <u>Transcendent Electra Management, LLC</u>, and facilitated by the Latchel platform. These services and their cost are separate from Resident's monthly rent payment and all other payments described in separate lease addendums.

Home Assistant Concierge delivers convenience and comfort to your home. The services include the following:

1.  **24/7 Home Services Scheduling.** You may call or text your concierge services, 24/7/365 for assistance coordinating home services like cleaning, furniture assembly, and a variety of other services that you as the Resident are responsible for. You may also contact your concierge service for issues like lockouts or to repair Resident caused damages.
2.  **$300 in service credits.** Enjoy $300 in credits to help pay for resident responsible services (e.g., home cleanings, furniture assembly, etc.) Credits will be available upon checkout, after the job is complete.
3.  **24/7 Repairs Contact.** Call or text your concierge, 24/7/365, at (914) 268-6474 ("Home Assistant Number"). Contact the Latchel Home Assistant for all maintenance requests and emergency repairs.
4.  **Online Portal.** You may use the unique link you receive from your concierge welcome message to request cleanings, furniture assembly, TV mounting, painting, carpet cleanings, and many other home concierge services. You may also use the unique link to submit repair and maintenance requests.
5.  **Free Troubleshooting Assistance.** You can use Latchel to connect with an expert troubleshooter via phone call or video chat if you need general help around the home or if you are experiencing a non-life threatening emergency. We can often help solve issues right away so that you do not have to wait for a maintenance technician.
6.  **Simple Scheduling.** You provide your availability for all concierge services and a provider will be scheduled according to your preferred schedule. You may cancel or reschedule at any time up to 24 hours before your scheduled appointments.
7.  **Expedited Maintenance Scheduling.** Routine repair appointments are scheduled on an expedited timeline based on the availability you provide. You may also provide permission to enter the home if you will not be available.
8.  **$300 Cash Reimbursements on Damages.** You may request up to $300 in reimbursements for common damages that you are responsible for. If your property manager bills you for damages, you may request a reimbursement for lockouts, toilet clogs, drain clogs, and garbage disposal damages.
9.  **Move-Out Repair Assistance.** Make necessary repairs in your home in order to avoid unnecessary deposit charges that are part of your responsibility, e.g. repairing damaged walls or carpeting.

**Home Assistant service level expectations:**

1.  A Home Assistant Concierge will be available to help you within 60 seconds, 24/7/365;
2.  Proactive updates on concierge services like cleaning deals, or other service specials;
3.  Expert troubleshooters are available to you 24/7/365 to resolve common issues quickly so that you do not need to wait for service technicians;
4.  SMS availability and video chat availability, 24/7/365;
5.  Appointment cancellation protection so that you don't get charged "no show" fees when you need to reschedule or cancel maintenance appointments more than 24 hours prior to the scheduled appointment time. Appointment protection also applies to any concierge services that you request so that you never get charged cancellation fees if you provide at least 24 hours notice;
6.  Proactive updates when there are scheduling or maintenance delays;
7.  A convenient mobile and online portal that walks you through in-home issues and allows you to track your concierge service requests or maintenance requests;

The above services will be billed by <u>Transcendent Electra Management, LLC</u>, monthly at a rate of <u>$14.99</u>. The Cost to the Resident will be billed monthly at the time of rent payment.

Landlord's Initials: _TC_ _____          Tenant's Initials: _WG_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

## Terms & Conditions

1. **Purpose:** Resident acknowledges that a major goal of the 24/7 Home Assistant is to maintain the property in excellent condition.

2. **Due Date:** Residents will be billed once each month at the same time as rent payment.

3. **Monthly Service Fee:** Each bill will include a service fee of <u>$14.99</u>.

4. **Updated Contact Information:** Resident acknowledges that all Resident contact information provided on the prior pages is up to date and shall be used by the Resident when contacting their 24/7 Maintenance Concierge. Failure to maintain updated contact information could lead to issues accepting maintenance requests, scheduling, and followup.

5. **Email and SMS Opt-In:** Resident acknowledges that they are opting-in to receive email and SMS messaging related to their maintenance service.

6. **Call Recording:** Resident agrees to have all of Resident's calls with Latchel, Inc., its agents and affiliates recorded for quality, training, and auditing purposes.

7. **Responsible Maintenance Reporting:** Resident acknowledges it is Resident's responsibility to submit maintenance requests to Latchel in a timely manner to uphold the property in excellent condition.

8. **Term:** The Agreement is effective upon Resident's signature of the Addendum and expires per the terms of the Lease Agreement. If, for any reason, the Lease is terminated, Resident understands and acknowledges that any obligations to <u>Transcendent Electra Management, LLC</u>, hereunder, are still effective and valid. <u>Transcendent Electra Management, LLC</u>, retains its right to collect any monies owed under this Agreement notwithstanding the Resident's legal rights against <u>Transcendent Electra Management, LLC</u>.

9. **Cash Reimbursement:** Resident may receive reimbursement of up to a maximum of <u>$300.00</u> per lease term and a maximum of <u>$300.00</u> in a 365-day period. Resident must submit the service request to the Home Assistant Concierge service and the maintenance must be coordinated and dispatched by Latchel to be eligible for reimbursement. Resident must provide proof of payment to be eligible for reimbursement. Reimbursement applies to lockouts, toilet clogs, drain clogs, or garbage disposal breaks dispatched by Latchel.

10. **Occupants:** Resident acknowledges responsibility for notifying the Management Company if there is a change in residency for any residents age 18 or older.

    **Limited Role.** Resident acknowledges and agrees that Home Assistant Concierge is a platform provided by Latchel, Inc. and not <u>Transcendent Electra Management, LLC</u>, This platform allows <u>Transcendent Electra Management, LLC</u>, vendors and other professionals (collectively, "Vendors") to connect with Residents who have maintenance needs or service requests. Neither <u>Transcendent Electra Management, LLC</u>, nor Latchel, Inc. is directly involved in transactions between Residents and Vendors. As a result, while each of the <u>Transcendent Electra Management, LLC</u>, and Latchel, Inc. may facilitate connections and take reasonable actions, each as determined in its sole discretion, to assess Vendors or review or confirm the quality of services provided by Vendors, neither the <u>Transcendent Electra Management, LLC</u>, nor Latchel, Inc. ultimately has any control over, and disclaims all liability for, the quality of the services provided by Vendors, or the ability of Vendors to complete the services in a timely, professional manner, if at all.

11. **Assignment:** The Agreement may not be assigned by Resident to any person, company or 3rd party without the express permission of <u>Transcendent Electra Management, LLC</u>. At its discretion, <u>Transcendent Electra Management, LLC</u>, may assign any claims against Resident for unpaid balances. Resident acknowledges and understands that such an assignment will be immediately effective, with or without notice, for the full delinquency, inclusive of any penalties or fees. <u>Transcendent Electra Management, LLC</u>, may also refer any account to a lawful collections company in the event that an account becomes delinquent.

12. **Incorporation:** This agreement is incorporated into the original lease and is operative and contingent upon the

Landlord's Initials: [ TC ] _____        Tenant's Initials: [ WJN ] _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

terms therein, where applicable. Resident acknowledges and understands that Latchel, Inc.is an intended 3rd party beneficiary to the Lease.

**13. Final Agreement:** No amendment or modification of this Agreement shall be valid or effective unless put into writing and signed by <u>Transcendent Electra Management, LLC</u>, and Resident. If any portion of this Agreement is invalid, illegal, or unenforceable the other portions shall not be affectedin any way and this Agreement shall be interpreted to enforce such provision consistent with the intentions of the parties to the maximum extent permitted by applicable law. ThisAgreement and all attached exhibits, addendum(s), and schedules, which collectively arecalled the Agreement, shall constitute the entire Agreement. All prior negotiations, proposals, bids, orders and any other communications are superseded by this Agreement and there are no other understandings, agreements, or express or implied representations. Where this Agreement differs from any other contract or correspondence, this Agreement prevails.

**14. Regulatory Compliance:** The terms and conditions set forth in this Agreement aresubject to the laws of the local, state and federal government. In the event that applicable laws do render certain practices in this agreement unlawful, Resident understands and acknowledges that Resident is responsible for all monies owed previous to the date of the regulatory decision to invalidate this agreement.

**15. Waiver and Breach:** No term or provision of this agreement will be considered waived by either party, and no breach excused by either party, unless such waiver or excuse ofbreach is in writing signed on behalf of the party against whom the waiver is asserted. No such waiver or excuse of breach of any provision of this Agreement by either party shall be deemed to be an ongoing waiver or excuse of subsequent breaches of any provision of this Agreement by the other party. No delay or omission in the exercise ofany remedy shall impair or affect a party's right to exercise the same.

Tenant # 1 Signature: _Without Prejudice, All rights Reserved By:William-Haywood: Gordon-Agent_    Tenant # 2 Signature: _____

Date Signed: _05/31/2022_    Date Signed: _____

Printed Name: _William Gordon_    Printed Name: _____


By: Transcendent Electra Management, LLC, LLC.
     Agent for the Owner
Signature/Printed Name of Agent for the Owner: _Felicia Walters_
                                                  48DC34453C9C40E
Date Signed: _5/27/2022_

Landlord's Initials: _TC_ _____    Tenant's Initials: _WD_ _____

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8708-A7DAF774363E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-9181BDF2E960

In reference to the LEASE FOR RESIDENTIAL PROPERTY by and between ___ET-8LP___ (hereinafter "Landlord") and ___William Gordon___, (hereinafter referred to as "Tenant"); covering the rental property at ___117 Martin Mill Trail, Warner Robins, Ga. 31093___.

THE UNDERSIGNED LANDLORD AND TENANT HEREBY AGREE TO THE FOLLOWING:

Disclaimer. General. Tenant and Landlord acknowledge that they have not relied upon any advice, representations or Inducement from the Broker/Agent/Employees and waive and shall not assert any claims against Brokers/Agent/ Employees involving the same. Tenant and Landlord agree that the Broker/Agent/ Employee shall have any responsibility to advise Tenant and/or Landlord on any matter including but not limited to the following except to the extent Broker has agreed to do so in a separately executed Property Management Agreement: any matter which could have been revealed through a survey, title search or Inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction and repair techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organism; the tax or legal consequences of this transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect property; the terms, conditions and availability of financing; and the uses and the uses and zoning of Property whether permitted or proposed. Tenant and Landlord acknowledges that Broker/Agent/Employees are not an expert with respect to the above matters above and that, if any of these matters or any other matters are of concern. Tenant should seek independent expert advice relative thereto. Tenant and Landlord acknowledge that Broker/Agent/Employee shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.

1. Agency Brokerage and Property Management
A. Agency Disclosure: In this Lease, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm Agent/Employee and, where the context would indicate, the Broker's affiliated licenses and employees. No Broker in this transaction shall owe any duty to Tenant or Owner/Landlord greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A 10-6A-1 et. seq.;
   1. No Agency Relationship. Tenant and Owner/Landlord acknowledge that, if they are not represented by a Broker/Agent/Employee, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
   2. Listing Broker. Broker working with the Owner/Landlord is identified on the signature page as the "Listing Broker"; and said Broker is [ ] OR, is not [X] representing Owner/Landlord;
   3. Leasing Broker. Broker working with Tenant is identified on the signature page as the "Leasing Broker"; and said Broker is [ ] OR is not [X] representing Tenant;

3. Brokerage: The Broker(s) identified herein have performed valuable brokerage services and are to be paid a commission by the Landlord, and the Leasing broker will receive a portion of the Listing Broker's commission pursuant to a cooperative brokerage agreement.

4. GAR Forms: The Georgia Association of REALTORS, INC. ("GAR") makes a certain standard real estate forms available to its members. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered, or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit, or amendment thereto. The Landlord has requested to use his Lease.

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774353E

DocuSign Envelope ID: F3AE8F7F-CD43-4051-9EC0-91B1BDF2E960

*All Names should be both signed and printed.*

Buyer:    Without Prejudice, All Rights Reserved          Seller: —DocuSigned by:

> By: William Heywood: Gordon-Agent          > *Tymesha Campbell*
William Gordon                                          8CP
Buyer Printed Name                                      Seller Printed Name

> _____          > _____
Buyer Printed Name                                      Seller Printed Name

Buyer Phone Number        /  Buyer Fax Number          Seller Phone Number      /  Seller Fax Number

Buyer Email Address                                     Seller Email Address

Buyer Address                                           Seller Address

Buyer City          State          Zip                  Seller City          State          Zip

**Buyer's Broker**                                      **Seller's Broker**

Main Source Realty, LLC.    / FADI01           Main Source Realty, LLC.    / FADI01
Name of Brokerage Firm      Broker Code        Name of Brokerage Firm      Broker Code

(770) 822-5522    / (770) 783-8337             (770) 822-5522    / (770) 783-8337
Brokerage Phone Number    Brokerage Fax Number Brokerage Phone Number    Brokerage Fax Number

> *Felicia Walters*                            > *Felicia Walters*
FELICIA WALTERS                                FELICIA WALTERS
Agent Printed Name                             Agent Printed Name

(770) 982-7575    /                            (770) 982-7575    /
Agent Phone Number    Agent Fax Number         Agent Phone Number    Agent Fax Number

felicia@rentingfast.com
Agent Email Address                            Agent Email Address

Required License Number(s):                    Required License Number(s):
H-54663    /284773                             H-54663    /284773
Broker's License Number    Agent's License Number  Broker's License Number    Agent's License Number

MLS Listing #_____

Form     1, Contract for the Purchase and Sale of Residential Real Property
Copyright © 2019 by Orthrus Real Estate Enterprises, LLC. All rights reserved.    Initials: [FW] [WG] [TC]
R05202019

DocuSign Envelope ID: 8F93DA3E-1B49-44DB-8706-A7DAF774363E



TRANSCENDENT
**ELECTRA**

**1170 Kane Concourse, Bay Harbor Islands FL 33154**
**Phone: 305-900-4725**
**Email: darchibald@timgmt.com**

Address: 117 Martin Mill Trail, Warner Robins, Ga. 31093
Tenant(s): William Gordon

The Landlord hereby agrees to reduce the rent, for July 2022, for the purchase of a refrigerator, in the amount of $1,500.00. Tenant must provide receipt for purchase, photos of the old refrigerator removed and new refrigerator in place, in the residence. Once this documentation is received, the rent credit will be applied to the tenant ledger.

Tenant hereby agrees to leave the purchased refrigerator, matching the model and serial number on the receipt, in the property upon the termination of their lease. If tenant does not leave said refrigerator, they agree that an amount, equal to the REPLACEMENT price of a new, comparable refrigerator will be due to the owner.

**Tenant:** _William Gordon_
DocuSigned by:
4A010F4B715A42D...

**Tenant:** _____

**Landlord:** _Tiqueshia Campbell_
DocuSigned by:
E5FDAEFB93B44D3...